## MIAMI VALLEY GAS & FUEL CO. v. MILLS.

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. CORPORATIONS (§ 479*)—MORTGAGES—RIGHT OF TRUSTEE—POSSESSION OF PROCEEDS OF MORTGAGED PROPERTY.

A trustee under a deed of trust to secure an issue of bonds holding the stock of another company, and who at the time of the sale of such company had been paid cash to an amount greater than necessary to fully pay off the outstanding bonds, had only a qualifying nominal interest in the stock, and was not entitled to have the whole purchase price paid to him.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

2. CORPORATIONS (§ 479*)—MORTGAGES—RIGHTS AND LIABILITIES OF TRUSTEE—COMPENSATION.

Laws 1904, c. 755, amending Code Civ. Proc. § 3320, and fixing the commissions or fees provided to be paid to a trustee of an express trust in cases where the instrument provides no specific compensation, was not intended to apply to a holder of a mere passive trust, such as that under a deed of trust to secure payment of corporation bonds.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

3. CONSTITUTIONAL LAW (§ 146*)—IMPAIRMENT OF CONTRACTS—TRUST DEED—STIPULATION FOR COMPENSATION OF TRUSTEE.

A stipulation in a trust deed executed to secure payment of corporation bonds that the trustee should have just compensation for all services rendered in connection with the trust left the question of just compensation open to judicial determination, and it was not competent for the Legislature to step in and alter the contract between the parties by arbitrarily fixing a compensation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 456, 457, 495; Dec. Dig. § 146.*]

4. CORPORATIONS (§ 479*)—MORTGAGES—RIGHTS AND LIABILITIES OF TRUSTEE—BAD FAITH.

The defendant, as individual trustee under a mortgage deed of trust to secure the payment of plaintiff's bonds consisting of one thousand

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bonds of one thousand dollars each, had custody of them and of all the capital stock of another company, and was required to sign the trustee's certificate indorsed upon the bonds, to receive money arising from sale of the securities and make proper application thereof, and to satisfy himself that the bonds presented to him as having been paid were canceled requiring only an inspection of the bonds themselves, and he was also trustee under a mortgage of the D. Company owned by plaintiff to secure bonds which had been canceled by plaintiff. *Held*, that in plaintiff's action to compel satisfaction of the mortgage and an accounting, he was not entitled to the amount of $6,300 arbitrarily paid to himself out of funds in his hands belonging to plaintiff for services under the D. mortgage; that, under the clause in the trust deed providing that he might pay such reasonable compensation as he might deem proper to attorneys employed "in the management of the trust," he was not entitled to an allowance of $3,000 for services of attorneys in resisting plaintiff's action for satisfaction of the mortgage and an accounting solely to compel the payment of a larger compensation than plaintiff was willing to pay, but that his bad faith in refusing to satisfy the mortgage and to account was not such as to charge him with the penalty of greater interest than he received on money deposited, or such as to wholly deny compensation, so that the sum of $1,000 in addition to that already received was a sufficient allowance for his services.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1869, 1872–1874; Dec. Dig. § 479.*]

Appeal from Special Term, New York County.

Action by the Miami Valley Gas & Fuel Company against John T. Mills, individually and as trustee, etc. From a judgment entered upon the decision of the court at Special Term, plaintiff appeals. Modified.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Graham Sumner, of New York City, for appellant.

David Leventritt, of New York City, for respondent.

SCOTT, J. The action is brought to compel the defendant, as trustee under a mortgage made by plaintiff, to satisfy the mortgage, and account for, pay over, and deliver to plaintiff all sums of money and all property received by him as such trustee, with interest, less such sums as said defendant might have lawfully expended or be entitled to retain as expenses and disbursements sustained or incurred in the execution of the trust.

The judgment directed the defendant, upon receiving from plaintiff a general release from all acts done under the deed of trust, to execute and deliver to plaintiff an assignment of certain shares of stock held by him, and to pay over to plaintiff the money now in his hands as trustee, with such interest as he may have received thereon from the Bankers' Trust Company since June 26, 1911, less certain sums allowed to him as commissions and as fees to be paid to his attorney and counsel. The appeal is directed to the sums which have been allowed to defendant, for there is no doubt upon the evidence that each and every one of the bonds secured by the deed of trust in which defendant was named as trustee was fully and finally paid by April 27, 1910, whereupon plaintiff became entitled as matter of law to a discharge of the lien of the deed of trust, and a return of all moneys and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property held thereunder, subject only to the payment to defendant of his just compensation for acting as trustee, and of his expenses legitimately incurred in the performance of his duties as trustee. Pending the adjustment of the amount so due him, which has now been fixed by the judgment appealed from, at about $15,000, being all that he claimed, defendant has persisted in his refusal to satisfy the deed of trust, and has retained in his hands over $100,000 in cash, and 9,985 shares of stock all the property of plaintiff. In holding up so large a sum of money and so great a quantity of stock to compel the payment of a comparatively small amount to himself, the defendant assumed a serious responsibility, and one of the questions raised by the appellant is whether he should not be charged with full interest upon the amount withheld by him. There is no dispute as to the facts, although opinions may differ as to some of the inferences to be drawn from those facts.

Three corporations were concerned in the transactions leading up to this action, all of them being engaged in the business of producing or purchasing and distributing natural gas. They were the plaintiff, the Dayton Gas & Fuel Company (hereinafter called the Dayton Company), and the Western Gas & Fuel Company (hereinafter called the Western Company). The plaintiff owned all the stock of the Dayton Company, and the Western Company owned 70 per cent. of the stock of the plaintiff.. The three companies were therefore virtually held by the same ownership, and were actually under the same control. On November 1, 1893, the Dayton Company executed a mortgage or deed of trust to defendant as trustee to secure an issue of bonds of the par value of $500,000. These bonds were all issued to the plaintiff, and were at all times owned by it until they were paid off and canceled in March, 1910. On January 1, 1894, plaintiff executed a mortgage or deed of trust to defendant to secure an issue of bonds of the par value of $1,000,000, consisting of 1,000 bonds for $1,000 each. The mortgage executed by plaintiff covered and became a lien upon all the property of the plaintiff, including real and personal property in the state of Ohio, and all the above-mentioned bonds issued by the Dayton Company, and all the capital stock of said Dayton Company consisting of 10,000 shares of the aggregate par value of $1,000,000. The stock and bonds of the Dayton Company were delivered to defendant and held by him. The bonds were paid off and canceled in 1910. The stock he still holds, except a few shares transferred at the request and with the consent of plaintiff. All the bonds issued by plaintiff and secured by the mortgage to defendant were issued to the Western Company, and were held and owned by that company until they were paid off and canceled as hereinafter stated.

Defendant's responsibilities under the mortgage executed by plaintiff were of the slightest. He was required to sign, and did sign, the certificate indorsed on each of the bonds to the effect that it was one of the series of bonds described in the mortgage, and he kept in his custody the bonds and stock of the Dayton Company pledged as security. Owing to the intimate relations which existed between plaintiff, the issuer of the bonds, and the Western Company, which at all

times held them, defendant had no duties to perform respecting the payment of the principal or interest of the bonds. For his services in signing the certificates defendant was compensated at the time at a rate satisfactory to him, and of which no complaint is now made. Matters continued until March, 1910, when plaintiff, as owner of the Dayton Company, concluded to sell the property of that company which it did for the sum of $1,000,000, defendant, as the nominal owner of the stock of the Dayton Company, at the request of plaintiff the beneficial owner, consenting to the sale. Of the purchase price the sum of $510,750 was paid to defendant in satisfaction of the issue of Dayton bonds held by him as trustee under the mortgage executed by plaintiff, of which he immediately paid the sum of $510,721.65 to the Western Company in satisfaction of $505,000 of plaintiff's bonds, which were thereupon canceled. Plaintiff had previously paid, by direct payment, $400,000 of its bonds held by the Western Company, and these bonds duly canceled were exhibited to defendant. This left unpaid $95,000 of plaintiff's bonds, secured by the mortgage under which defendant was trustee. The Dayton Company having sold its property was then practically wound up, its capital was reduced to a nominal figure, and its surplus, consisting of $489,583.33, part of the purchase price of its property, was distributed by means of two dividends, one of 10 per cent. amounting to $98,850, which was paid to plaintiff as the nominal holder of its capital stock, and which was more than enough to pay off in full all the outstanding bonds of plaintiff for which that stock had been pledged. What remained of the surplus was paid as a dividend to plaintiff, the actual and beneficial owner of the stock. The defendant now had in his hands as trustee upwards of $105,000, applicable to the payment of the then outstanding bonds of plaintiff, amounting as above stated to only $95,000, with some accrued interest, so that he actually held in cash much more than enough to pay all the outstanding bonds for which he was trustee. Application was thereupon made to him to pay off said outstanding bonds and execute a satisfaction of the mortgage or deed of trust. Having retained counsel, and acting under advice, he proceeded to interpose obstacles to thus winding up his trust, it being very evident, although not openly expressed, that his purpose was to coerce plaintiff into paying him as compensation for his services a much larger sum than plaintiff considered him to be entitled to or was willing to pay. Plaintiff thereupon, out of other resources, paid off and procured the cancellation of the $95,000 of bonds remaining unpaid, and renewed its demand that defendant should satisfy the mortgage, and pay over the cash in his hands. He again refused, and this action resulted. The principal question to be determined is whether or not defendant is legally entitled to be compensated at the rate which he claims and at which the judgment appealed from allows him compensation, but, before dealing with that question, it will be well to examine some of the excuses, apart from the question of compensation, which defendant offers for his insistence in holding onto plaintiff's property after all his duties with respect to it, had been terminated by the complete payment of the indebtedness secured by the mortgage to him as trustee.

In his brief on this appeal the defendant relies as "the main grounds upon which the defendant refused to comply with plaintiff's demand" upon the uncertainty as to whether there were still outstanding 150 genuine bonds, and the plaintiff's violation of its agreement that the security in the defendant's hands was not to be impaired. What defendant calls an "incidental ground," but which we conceive to have been the real ground, is stated to be "the refusal of the defendant to agree upon the plaintiff's proper compensation." The uncertainty as to the 150 bonds arose as follows: Defendant had signed the trustee's certificate indorsed upon the bonds at two times, and undoubtedly believed, as did the plaintiff, that he had signed the whole issue of 1,000 bonds. He had kept no account or record of how many he had signed, and, in point of fact, as afterwards appeared, he had signed only 850, although the whole number of 1,000 had been delivered, and held by the Western Company, and were included among those paid off and canceled. When the $400,000 of bonds, which had been paid by the plaintiff and canceled, were presented to defendant, he discovered that 150 of them had not been certified by him. Not knowing how many bonds he had signed, and perhaps believing that he had signed the whole issue of 1,000 bonds, he professed an apprehension that there might be outstanding in other hands, 150 bonds which he had signed. As to 100 of the bonds he was readily satisfied, and as to the other 50 plaintiff, at the suggestion of defendant's counsel, offered to give him an indemnity bond from an approved surety company. Such a bond, in form approved by defendant's counsel, was arranged for and actually prepared for execution.

[1] The defendant then objected that the whole purchase price of the property of the Dayton Company had not been paid to him, claiming that he had been entitled thereto as the principal owner of the Dayton Company Stock. The failure to pay him this sum was claimed to have been an impairment of the security he held, although he had in fact been paid cash to an amount greater than was necessary to fully pay off all outstanding bonds. The event seems to have justified the wise foresight of plaintiff in not paying the defendant something like $500,000 more than would be necessary to pay off all outstanding bonds, and in our opinion the defendant had no valid claim to be paid that sum. Although the stock of the Dayton Company stood in his name as trustee, his interest therein was only a qualified one, the plaintiff being the beneficial owner, subject to the lien thereon for the $95,000 of outstanding bonds. When these bonds had been paid or the cash to pay them had been deposited with the trustee, his interest in the stock was wholly satisfied. At all events, after the last outstanding bond had been paid, there could have been no purpose on the part of the trustee in demanding that the whole purchase price should be paid to him, except to furnish a basis for an increased demand for compensation, and this undoubtedly was his purpose.

The defendant makes other frivolous and unimportant criticisms upon what he claims to have been departures from the strict letter of the mortgage on the part of plaintiff. It is useless to consider them in detail because, whether well founded or not, they furnished no reason

why, after all the bonds had been fully paid, the defendant should have persisted in his refusal to pay over to plaintiff the money remaining in his hands, and to formally release its property from the lien of the mortgage.

[2] This brings us to the question which has really given rise to the whole controversy, and that is the compensation to which defendant is entitled for his services. The contention of the defendant, which has been sustained by the trial court, is that said defendant is entitled as matter of law to the commissions or fees provided to be paid to a trustee of an express trust under section 3320 of the Code of Civil Procedure, in cases in which the instrument creating the trust provides no specific compensation for the services of the trustee. In applying this section of the Code, the court has allowed to defendant full commissions, not only upon the cash which actually passed through his hands, but also upon the estimated value of the securities deposited with him. The history of the law of this state relating to the compensation of trustees, culminating in the adoption in 1904 (Laws 1904, c. 955) of the amendment to section 3320 under which defendant claims, will show, as we think, that that amendment was not intended to apply to a holder of a mere passive trust such as that which defendant held.

[3] But, if it were so intended, it is not applicable to this case because the mortgage itself, executed long before the amendment of 1904, contained an express stipulation amounting to a contract between plaintiff and defendant that:

"The trustee shall be entitled to and shall have, just compensation for all services that he may render in connection with the trust, to be paid by first party out of the estate."

This provision left it open to judicial determination (if the parties were unable to agree) as to what in view of the services rendered by the trustee would be a just compensation, and it was not competent for the Legislature, even if its act would bear that construction, to step in and alter the contract between the parties by arbitrarily fixing a compensation to be estimated not upon the value of the services performed, but upon the value of the cash and securities passing through the hands of the trustee.

[4] In the present case the services of the trustee were not onerous, nor his responsibilities great. He received a considerable sum of money with one hand and immediately paid it out with the other. He also received, as pledgee and custodian, a considerable amount of stock, as to which, as the event proved, no further duty devolved upon him than to keep it in a safe deposit vault, and he was required to satisfy himself that the bonds presented to him as having been paid had been canceled which required nothing more than an inspection of the bonds themselves. To award him upwards of $11,000 for performing these slight and practically perfunctory duties is certainly allowing him much more than "just compensation." The judgment allows defendant for his services under the Dayton Mortgage the sum of $6,311, which he paid himself out of the funds in his hands belonging to the plaintiff. There is no justification whatever for this allowance either in the

pleadings, the proof, or the findings. It was a sum arbitrarily fixed by defendant and paid to himself out of the trust funds in his hands belonging to plaintiff. Whether he was entitled to this or any sum for these services was not an issue in the case, was not litigated, and is not the subject of any finding. The court also allowed to defendant the aggregate sum of $3,000 for the services of his attorney and counsel in the defense of this action. This allowance is sought to be justified under a clause in the mortgage which provides that the trustee may "pay such reasonable compensation as he may deem proper to attorneys * * * whom he may reasonably employ in the management of the trust." From no point of view can the carrying on of this litigation be considered as having anything to do with the "management of the trust," for that had been finished before the action was begun by the payment and cancellation of every bond secured by the mortgage. Thereafter there remained no duty to be performed by defendant except to return to its rightful owner the cash in his hands, and to release the apparent lien on its property which had served its purpose. This litigation has been carried on by defendant solely for his own benefit, namely, to compel the payment of a larger sum by way of compensation than the plaintiff was willing to allow. It is perfectly well settled that a trustee may not charge against a trust estate the expenses of a litigation carried on solely for his own benefit, as it is evident that this litigation has been carried on. A serious question is as to the rate of interest with which defendant should be charged upon the moneys which he has withheld. It has remained on deposit in a trust company drawing interest at the low rate usually allowed upon such deposits. In the opinion of the writer the defendant's claims have been so unreasonable that his refusal to pay over even a part of the withheld money justifies a judgment requiring him to pay interest at the legal rate. Allowing him everything which he has ever claimed for compensation and expenses, as the court below has done, he has insisted upon retaining and has retained for more than three years upwards of $80,000, the undisputed property of the plaintiff, and to which the defendant has no claim, and never had or asserted a claim. If defendant had offered to pay over this sum or an approximate sum, retaining in his hands only enough to cover all that he claimed to be entitled to be paid, different considerations would be presented. A majority of the court are, however, of the opinion that the defendant's bad faith is not so clearly apparent as to require the imposition upon him of the penalty involved in requiring him to pay more interest than the money has actually earned. The same consideration which in the opinion of the writer would justify the imposition upon defendant of the obligation to pay full interest would also lead to the refusal to allow him any compensation beyond what he has actually received. But upon the assumption that he has not knowingly acted in bad faith, but upon reliance upon advice which he thought himself justified in following, a majority of the court is unwilling to wholly deprive him of compensation. What would be "just compensation for the services rendered" is not easy to determine. So far as concerns actual work defendant had little to do. So far as regards the assumption of re-

sponsibility there was little of that, and what there was was laid upon the shoulders of defendant's counsel, to whom a liberal allowance has been made by the judgment appealed from.  Taking everything into consideration, we are of the opinion that the sum of $1,000 would be ample, perhaps a liberal, allowance to defendant for his services, besides what have already been paid for.

It is quite evident that there is to be found in the case all the evidence necessary to render a just judgment, and it would therefore serve no useful purpose, but merely aggravate the injury already done to plaintiff, to send the case back for a new trial.

The result of what has already been said, will be to modify the judgment appealed from so as to require the defendant to execute and deliver to the plaintiff a release of all the property still covered by the said deed of trust, and deliver to the plaintiff the 9,985 shares of stock of the Dayton Gas & Fuel Company now held by him and the balance of the cash on hand and received by him as trustee under the mortgage executed by plaintiff, with such interest as the same may have earned while in his hands, less the sum of $1,000 for his compensation as trustee, and the further sum of $1,000 for compensation for his counsel for services rendered prior to the commencement of this action, and as so modified the judgment will be affirmed, with costs to the plaintiff-appellant in this court and the court below.  Except as so modified, the judgment is reversed.

This disposition of the appeal requires certain modifications of the findings, many of which relate to irrelevant matters, or consist of findings of evidence, or are mixed findings of fact and conclusions of law. The fifteenth finding of fact is reversed.  The seventeenth and eighteenth findings are reversed as irrelevant.  The twenty-fifth and twenty-sixth findings are reversed for the same reason, as are also the fortieth, forty-fourth, and forty-fifth findings.  The forty-seventh finding is reversed in so far as it holds that defendant was entitled to receive the dividend amounting to $539,190 upon the shares of stock of the Dayton Gas & Fuel Company held by him.  The fiftieth, fifty-first, fifty-second, and fifty-third findings are also reversed, as are also the fifty-seventh, fifty-ninth, sixty-second, seventieth, seventy-first, and seventy-second.  The seventy-fifth and seventy-sixth findings are modified by striking from each of them the words, "and is a proper item of credit on defendant's account herein."  The eightieth finding is reversed.  All of the conclusions of law embodied in the decision are reversed, and in place thereof the court finds in accordance with the terms of the judgment as hereinbefore directed to be modified.  The following findings of fact requested by the plaintiff, but refused by the court are hereby found as facts in the case:  Nos. 44, 56, 57, 60, 61, 66, 67, 71, 80, 82, 83, 84.  The following conclusions of law requested by the plaintiff are also found:  Nos. 1, 2, 5, 6, 7, 8, 9, 11, 12, 18.  The court also finds as conclusions of law in accordance with the terms of the judgment as hereinbefore directed to be modified.

Settle order on notice, when any requests to further reverse findings of fact or conclusions of law or to make new findings or conclusions, will be entertained.  All concur.