**KOSCINSKI v. WHITE, Treasurer of the United States, et al.**

(District Court, E. D. Michigan, S. D. January 12, 1923.)

No. 390.

1. **Principal and agent ⬦⟞102(2)—Principal held bound by contract of agent for employment of attorney.**

Alien legatees of an American testator, who by a power of attorney authorized a consul of their government to represent them in the recovery of their legacies and to receipt therefor, *held* bound by a contract made by the consul for employment of an attorney and the payment of a reasonable fee for his services.

2. **War ⬦⟞12—Claims against property in hands of Alien Property Custodian; "debt."**

A contract made on behalf of alien enemies to pay for the services of an attorney in obtaining for them legacies from an American estate does not give the attorney a lien on the money recovered after it has passed into the hands of the Alien Property Custodian; but his claim constitutes a "debt," within the meaning of Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), as amended by Act June 5, 1920.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

3. **War ⬦⟞12—Suit against Alien Property Custodian is proceeding in rem.**

A suit against the Alien Property Custodian or the Treasurer of the United States, under Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), as amended by Act June 5, 1920, is essentially a proceeding in rem, analogous to an equitable attachment, and under section 17 of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i), the court may make rules and orders as to service in such suits, which, when complied with, give it jurisdiction as against the alien owner to enforce its decrees against the property.

In Equity. Suit by Leopold A. Koscinski against Frank White, Treasurer of the United States, and others. On motion to dismiss bill. Denied.

Arthur A. Koscinski, of Detroit, Mich., for plaintiff.

Earl J. Davis, U. S. Atty., and Fred L. Eaton, Asst. U. S. Atty., both of Detroit, Mich., for defendant White.

TUTTLE, District Judge. This is a motion to dismiss a bill of complaint filed by one Leopold A. Koscinski, an attorney at law residing and practicing in this district, against the defendant White, as Treasurer of the United States, a resident of the District of Columbia, and other defendants, citizens and residents of Czecho-Slovakia, and was brought for the purpose of recovering on an alleged contract for the payment of a certain sum to plaintiff for legal services rendered by him as stated in the bill.

The suit is based upon section 9 of the so-called Trading with the Enemy Act, being the Act of October 6, 1917, chapter 106, 40 Statutes at Large, 411 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), as amended by the Act of June 5, 1920, chapter 241, 41 Statutes at Large, 977. This section provides that:

⬦⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Any person * * * claiming any interest * * * in any money * * * paid to the Alien Enemy Custodian, * * * or to whom any debt may be owing from an enemy * * * whose property or any part thereof shall have been * * * delivered, or paid to the Alien Property Custodian, * * * may * * * institute a suit in equity in the Supreme Court of the District of Columbia or in the District Court of the United States for the district in which such claimant resides, * * * (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest * * * or debt so claimed, and if so established the court shall order the payment * * * to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to which the court shall determine said claimant is entitled. If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, or in the treasury of the United States, as provided in this act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment * * * by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court."

The material allegations in the bill of complaint, in addition to the foregoing references to the parties, are as follows: That in 1914, one Cohen died, in said eastern district of Michigan, having bequeathed certain sums of money, to be realized from the property owned by him at his death, to the said alien defendants, his will being duly probated in the probate court for Wayne county, in said district; that notice of the filing of said will for probate was forwarded to one Ernest Ludwig, residing in Cleveland, Ohio, the consul of the government of Austria-Hungary, of which country said alien defendants were then subjects and residents; that said consul, in accordance with the laws of the United States and the treaties between it and Austria-Hungary, was the official representative of his government in all matters concerning the rights of its subjects claiming any property in the United States as heirs of a resident of this country, his jurisdiction in such matters extending to the estates of decedents administered in said probate court; that in April of said year plaintiff received from said consul a written request to investigate the estate of the said decedent and to inform said consul relative to the merits of the case; that plaintiff promptly made such investigation and reported to said consul concerning the assets of said estate and the provisions of said will, also advising such consul that if he so desired plaintiff would appear in the matter as the representative of said consul, for the purpose of taking care of the interests of such legatees; that at the same time he asked said consul to obtain powers of attorney from each of said legatees, so that their respective bequests might be collected and received; that a few days thereafter plaintiff received a letter from said consul, stating that he had written to his home authorities to obtain a power of attorney from the legatees, and that he would be obliged if plaintiff would in the meanwhile take care of their interests; that thereafter, and until the said estate was closed, plaintiff performed legal services "in behalf of the said consul, Ernest Ludwig, and in behalf of the heirs," to protect and preserve their interests in said estate; that for several years prior to April, 1914, plaintiff had represented the said consulate in similar matters, and that he had an agree-

ment with the said consulate to charge the sum of 5 per cent. of the total amount of the estate for his services; that the final account of the executors in the said estate, as allowed by said probate court February 15, 1918, showed a balance due to the said defendant heirs, "being the heirs whom this plaintiff represented on behalf of the said consul," of about $22,000, and that, therefore, the amount due to plaintiff for his said services was 5 per cent. of said sum; that, in view of the war then existing between the United States and Austria-Hungary, the money belonging to said heirs was paid by the executors of said estate to the Alien Property Custodian, and by the latter to the Treasurer of the United States, and that plaintiff then filed a notice of his claim with the proper government official and has done all that was required of him by this statute prior to bringing this suit.

The bill of complaint prayed for an order requiring the defendants to pay to plaintiff the money so claimed to be due him and that such amount be deducted by the defendants from the shares of the said alien heirs, and for general relief.

In the motion to dismiss the bill of complaint, filed by the defendant White as Treasurer of the United States, it is averred that it appears from said bill that the claim asserted by plaintiff arose out of transactions between the latter and said consul, and that whatever amount plaintiff was entitled to was owing by such consul. The motion also alleges that it appears from the bill of complaint that plaintiff is not entitled to the relief prayed.

Plaintiff has filed an affidavit in opposition to said motion to dismiss, in which affidavit he admits that his claim arose out of certain transactions between him and said consul but he asserts that all services rendered by him were performed for said Ernest Ludwig wholly in his official capacity as consul, and that the latter, in his official capacity as a representative of his government and as the legal representative of the alien defendants, intrusted the matter to plaintiff; that after he had been retained by the said consul the latter forwarded to plaintiff, from all of said alien defendants, powers of attorney constituting and appointing "the Imperial and Royal Austro-Hungarian consulate at Cleveland, Ohio," their "true and lawful attorney," "in their name, place and stead, to do any and all acts or things whatsoever proper or necessary for the purpose of collecting damages, insurance benefits, or any other benefits arising by reason of the death of" the aforementioned decedent, "the said Ernest Ludwig, attorney in fact, being given full power to represent each of said heirs in all courts and for all purposes, and to receive and receipt for the distributive shares in the estate of said deceased." In this affidavit plaintiff also alleges that in consequence of rendering such legal services he has a lien on said distributive shares of said heirs, and that under section 9 of said Trading with the Enemy Act he "claims an interest in the money now held by the Treasurer of the United States for said heirs," and that such claim constitutes a "debt" within the meaning of said section.

Plaintiff is not entitled to have his said affidavit considered as a part of the bill of complaint, but as the cause is not at issue on any question

of fact, and no objection to such consideration of the affidavit is raised by the government in its brief, submitted after the filing of said affidavit, I have concluded to treat the latter as in the nature of a proposed amendment to the bill, and to grant leave to make such amendment.

[1] 1. Accepting (as it is necessary to do for the purposes of this motion to dismiss) the allegations in the bill as true, and considering the broad authority conferred by the alien defendants (sought to be charged as principals) upon their attorney in fact by the full powers of attorney referred to in the bill, I cannot conclude that plaintiff has not set forth a good cause of action against them, based upon his employment by an agent impliedly authorized by them to employ counsel, and therefore to pay at least reasonable attorney's fees for services rendered for and on their behalf under such employment and resulting in their benefit. Where, as is here alleged, the services of counsel are reasonably necessary for the proper performance of duties and powers intrusted to a general or special agent, such as said consul appears from the bill to have been, the appointment of such agent clothes the latter with implied authority to employ such counsel and to make proper contracts for payment of compensation for legal services so rendered, for which, even in the absence of express authority to such agent, the principal is liable. 2 Corpus Juris, 661.

[2] 2. In the absence, however, as here, of any alleged possessory lien, or of any judgment, contract, or statute creating a lien, plaintiff is not entitled to such a lien on the money in the hands of the defendant Treasurer. It is therefore clear that the claim of an "interest" in the money involved cannot be sustained. Burke v. Child, 21 Wall. 441, 22 L. Ed. 623; De Winter v. Thomas, 34 App. D. C. 80; Boyle v. Boyle (C. C.) 116 Fed. 764; Turner v. Woodard, 259 Fed. 737, 170 C. C. A. 537 (C. C. A. 1); 6 Corpus Juris, 766 et seq.

3. The contention of plaintiff that his claim constitutes a "debt" within the meaning of the statute is manifestly correct, and the objection urged by the government to the contrary must be overruled. The interesting and scholarly argument advanced in the brief submitted on behalf of the government has received careful consideration; but, however meritorious such argument might have been under strict rules of law and pleading at one time in force, it cannot, in my opinion, be doubted that, under modern legal phraseology and our present system of law and of practice, the contract for legal services alleged by plaintiff, whether regarded as an express promise to pay a stated percentage of the amount recovered (and therefore definite and certain in its amount) or as an implied promise to pay the reasonable value of such services, the obligation arising from said alleged contract constitutes, and is properly termed, a "debt," within the meaning of the statute here involved. Norris v. Bergdoll (D. C.) 283 Fed. 981.

4. The objection by the government to the effect that a portion of the claim of the plaintiff appears from the bill to have arisen subsequent to October 6, 1917 (the date of the taking effect of the statute), and that, therefore, under section 9 of said statute, to that extent at least plaintiff is not entitled to recover, is equally without merit. It

is true that by said section it is provided that no debt shall be allowed thereunder, "unless it was owing to and owned by the claimant prior to October 6, 1917." In view, however, of the allegations in the bill concerning the facts and circumstances which gave rise to the agreement relied on by plaintiff, it cannot be held that the bill shows on its face that the debt sought to be recovered herein was not "owing to and owned by the claimant prior to October 6, 1917." This objection can be raised in defense of the suit on the merits, but is not available on this motion to dismiss the bill.

[3] 5. While this disposes of all of the objections and questions raised by the government, yet a further consideration deserves notice. It will be noted that plaintiff has made the alien enemy heirs parties defendant to this suit. It appears, however, both from the allegations in the bill and also by affidavit and petition filed in this cause for the purpose of obtaining constructive service on said defendants, that the latter are beyond the reach of personal service of the process of this court, and consequently, under familiar rules of law, the court is without jurisdiction to make a decree in personam against them in this suit, so as to render them personally liable for payment of any decree herein. It may therefore be pertinent and proper to point out the grounds on which the jurisdiction of the court to proceed in this cause is based.

Before the enactment of the Trading with the Enemy Act, actions and suits could have been brought, in proper cases, by persons not enemies against enemies owning property located within the jurisdiction of the court in which such suits were brought, by attachment, garnishment, or similar appropriate proceedings in rem, although such enemies were beyond such jurisdiction and could not be personally served, and by appropriate substituted service jurisdiction could be obtained, which would enable the court to render a judgment for the plaintiff enforceable out of, and to the extent of, the proceeds of said property. This was true, even after the commencement of the war between the United States and Germany and her allies, although after that event the property of such enemies was subject to seizure and even confiscation by the United States government. Under these circumstances, Congress enacted the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j), already referred to. According to the purpose and effect of this statute, all property of such enemies was to be seized and kept in custody by the United States government through its proper officials, pursuant to the terms and conditions of said statute, the details of which need not be reviewed here. The object, and the provisions for accomplishing such object were, to be sure, harsh; but it must be borne in mind that the act in question was war-time legislation, and not only the best interests, but the very existence, of the nation required severe and even harsh measures in dealing with the enemies with which the country was at war. It cannot be doubted that the enactment of this statute was within the constitutional powers of Congress. Central Trust Co. v. Garvan, 254 U. S. 554, 41 Sup. Ct. 214, 65 L. Ed. 403; Stoehr v. Wallace, 255 U. S. 239, 41 Sup. Ct. 293, 65 L. Ed. 604; Kahn v. Garvan (D. C.) 263 Fed. 909.

In view of the absence from the act of any requirement for personal service of process upon an enemy, when made a defendant in a suit under the act, as a necessary basis for a decree in favor of the claimant or for satisfaction of such a decree by payment by the Alien Property Custodian out of the property or money of said defendant enemy, in the custody of the government, and in view of the language of subdivision (f) of said section 9, as amended, to the effect that, except as provided in said act, such property "shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court," and bearing in mind also section 17 of the act providing that "the District Courts of the United States are hereby given jurisdiction to make and enter all such rules as to notice and otherwise, and all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this act," it is evident that Congress intended to substitute, in place of the previously existing remedies by attachment and other proceedings in rem by which citizens of this country could formerly have recovered against alien enemies (before such remedies were taken away by this statute), the newly created remedies afforded by the language of section 9, in connection with that of section 17 of said statute, already quoted. Spiegelberg v. Garvan (D. C.) 260 Fed. 302.

By providing in section 7 that "an enemy or ally of enemy may defend by counsel any suit in equity or action at law which may be brought against him," and, in section 9, for a judgment or decree "against the claimant," the rights of such enemies are adequately protected. Garvan v. Commercial Trust Co. (D. C.) 275 Fed. 841. By the provision for constructive notice and for seizure of the property and its subjection to the rights of claimants, a proceeding essentially in rem, and analogous to an equitable attachment, is sufficiently indicated. Under established legal principles, this is not inconsistent with due process of law or otherwise contrary to constitutional safeguards. Holmes v. Holmes (D. C.) 283 Fed. 453, and cases there cited.

Pursuant to section 17 of the act, this court has already ordered herein that copies of the aforesaid bill of complaint be duly mailed by registered mail to each of the alien defendants, directed to their last known address, and that proof of service of the mailing of said copies be made by affidavit to be filed in this court, and that each of said defendants shall enter or cause to be entered his or her appearance in this cause within 60 days after the mailing to each of them of a copy of said bill, under the penalty of having such bill taken as confessed by such of said defendants as fail to appear. Strict compliance, on the part of plaintiff, with the terms of this order, will, of course, be required before any hearing can be had on the merits of the cause. This is, in my opinion, sufficient and adequate constructive service under the statute involved.

An order will be entered granting plaintiff 10 days from the entry thereof within which to amend his bill of complaint as herein suggested, and directing that on the filing of such amended bill within such period the motion of defendant be denied.