**ROCKWOOD et al. v. MILLER, Alien Property Custodian, et al.**

(Court of Appeals of District of Columbia. Submitted February 14, 1923. Decided June 4, 1923.)

No. 3872.

1. War ⬅12—Claim for value of services rendered is "debt," enforceable against Alien Property Custodian.

The claim of attorneys, who were citizens, for the reasonable value of services rendered by them under employment by aliens, is a "debt," within Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), allowing recovery of debts owing to citizens from property in the hands of the Alien Property Custodian.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

2. War ⬅12—Provision for recovery of debts by citizens should not be construed to defeat its purpose.

Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), authorizing citizens to recover debts owing to them from aliens from property of the aliens in the hands of the Alien Property Custodian, is of a remedial character, and should not be so strictly construed as to defeat its evident purpose.

3. War ⬅12—Claims recoverable by citizens from Alien Property Custodian are not limited to liquidated demands.

The provision of Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), that the President may direct the payment of a claim asserted by a citizen against property in the hands of the Alien Property Custodian does not limit claims which may be asserted thereunder to liquidated claims, since Congress thereby evidently intended to provide a summary means for disposing of claims as to which there might be no substantial controversy, but also provided that, if payment was not ordered, the claimant might institute a suit in equity to establish his claim.

Appeal from the Supreme Court of the District of Columbia.

Bill in equity by Nash Rockwood and another, trading as Rockwood & Lark, against Thomas W. Miller, as Alien Property Custodian, and another. From a decree dismissing the bill, plaintiffs appeal. Reversed and remanded.

R. H. McNeill, of Washington, D. C., for appellants.

Peyton Gordon and Dean H. Stanley, both of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District sustaining a motion to dismiss the bill (plaintiffs electing to stand thereon), in which plaintiffs sought to recover on a quantum meruit under a contract of employment entered into with Gebruder Stollwerck Aktiengesellschaft on November 16, 1914; the court ruling that plaintiffs' claim is not a debt, within the meaning of section 9 of the Trading with the Enemy Act (40 Stat. 419 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e]).

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] In their bill the plaintiffs, who are attorneys, allege that they were employed by the above firm to represent that firm in certain pending litigation, that valuable services were rendered under the contract, and that there is reasonably and justly due therefor the sum of $7,500. The sole question, therefore, is whether, under the provisions of the act in question, the suit is maintainable.

In Robertson v. Miller, as Alien Property Custodian, et al., 286 Fed. 503, recently decided in the Circuit Court of Appeals for the Second Circuit, the question before the court was whether a claim for breach of a commercial contract is a debt, within the meaning of the Trading with the Enemy Act. After an exhaustive examination of the question the court found in the affirmative. The reasoning of the court in that case is applicable here, and we therefore adopt and follow it. Moreover, in Van Deusen v. Blum, 18 Pick. (Mass.) 229, 29 Am. Dec. 582, it was expressly held that "debt, as well as assumpsit, will lie on a quantum meruit or a quantum valebant." To the same effect are Norris v. School District, 12 Me. 293, 28 Am. Dec. 182, and McVicker v. Beedy, 31 Me. 314, 50 Am. Dec. 666.

[2] Legislation of a remedial character, such as this, should not be so strictly construed as to defeat its evident purpose. The plaintiffs in this case are American citizens, and, under the averments of their bill, performed valuable services for which they have not been compensated. Had they been promised a specific sum, there would be no question as to their right to maintain this action. To deny them such a right, because it will be necessary to determine the value of their services, would be to place form before substance, which a court of equity should not do.

[3] It is suggested by counsel for the defendants that because the President, upon application to him, may direct the payment of a claim asserted under section 9, Congress could not have intended to bring within the scope of that section any but liquidated claims. Evidently it was the intention of Congress, through this provision, to provide a summary means for disposing of all claims as to which there might be no substantial controversy, whether liquidated or unliquidated, for the section provides that, if the President shall not order payment upon application made, the claimant within a time stated may "institute a suit in equity * * * to establish the interest, right, title or debt so claimed, and if so established the court shall order the payment," etc.

It follows that the decree must be reversed, with costs, and case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.