## BRIESEN et al. v. A CERTAIN FUND et al.

(Court of Appeals of District of Columbia.
Submitted November 7, 1924. Decid-
ed January 5, 1925.)

No. 4101.

1. War ⬅12—Attorneys to whom owner had transferred corporate stock held entitled to lien for compensation as against Alien Property Custodian.

Attorneys, to whom owner had transferred corporate stock, with directions to hold shares and dividends for owner, and to transfer and deal with the stock and to attend meetings of shareholders and vote in such manner as owner should direct, were entitled to a lien on the shares and accumulated dividends for their compensation, as against Alien Property Custodian, on seizure of stock by Custodian.

2. Trusts ⬅315(1)—Arrangement held not an express trust, within statute providing for a lien for compensation for "trustees of express trust."

Persons to whom owner had transferred corporate stock, under contract requiring them to hold stock and dividends for owner's benefit, and deal therewith in manner directed by owner, held not "trustees of an express trust," within Code Civ. Proc. N. Y. § 3320, providing for compensation of such trustees.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trustee of Express Trust.]

3. Attorney and client ⬅163—Surviving partners could sue for commissions earned by firm previous to death of member.

Where corporate stock was transferred to firm of attorneys for certain purposes, and one of the members died subsequent to seizure of stock by Alien Property Custodian, the surviving partners, who continued to practice under the same firm name, could bring action against Alien Property Custodian under Trading with Enemy Act, § 9 (Comp. St. § 3115½e), to recover compensation for services in connection with the stock.

4. Partnership ⬅258(7)—Failure of surviving partners to so designate themselves in complaint held not fatal.

Failure of surviving partners of firm to so designate themselves in complaint held not fatal, since such failure, if it constitutes a defect, may be corrected by amendment.

Appeal from the Supreme Court of the District of Columbia.

Action by Fritz von Briesen and others against a certain fund, Thomas W. Miller, as Alien Property Custodian, and another. Decree of dismissal, and plaintiffs appeal. Reversed and remanded.

A. K. Nippert and J. W. Brown, 3d, both of Washington, D. C., and J. W. Peck, of Cincinnati, Ohio, for appellants.

D. H. Stanley, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BARBER, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. This is an appeal from a final decree of the Supreme Court of the District of Columbia, dismissing a bill of complaint filed by the appellants, as plaintiffs, against the Alien Property Custodian, under section 9 of the Trading with the Enemy Act (Comp. St. § 3115½e).

It appears that the Schmidt'sche Heissdampf Gesellschaft, a German corporation, was the owner of a majority of the capital stock of the Locomotive Superheater Company, an American corporation, whose principal offices were in the city of New York, and that in the year 1911 the former company entered into a written contract with the firm of Briesen & Knauth, composed of Arthur von Briesen, Antonio Knauth, Fritz von Briesen, Hans von Briesen, and Otto von Schrenk, attorneys at law of New York, whereby the German company "allotted" to the latter parties, as trustees for the benefit of the former, 650 shares of the capital stock of the Superheater Company, upon condition that the trustees should hold the shares and all dividends thereon for the beneficiary, and should transfer, pay, and deal with the same in such manner as the beneficiary should from time to time direct; also that the trustees, at the request of the beneficiary, should attend all meetings of the shareholders as registered holders of the shares, and should there vote in such manner as the beneficiary should have previously directed in writing, or, if so required by the beneficiary, should execute all proxies or other documents necessary and proper to enable an authorized officer of the beneficiary to vote at such meetings in the place of the trustees.

The specified shares were assigned to the trustees, and they acted under the agreement. Afterwards, in July, 1913, the president and directors of the German corporation stated to Mr. Schrenk, while in Germany, that, having no director residing in America, they would have to rely on his firm to look after their interests in connection with the Superheater stock, and requested the firm to watch the affairs of the company and protect their interests, stating

that further stock would probably be transferred to them as trustees.

Subsequently the German company instructed Briesen & Knauth at divers times to transfer to various persons certain portions of the 650 shares of stock held by them under the contract. These directions were complied with, and by December, 1915, all of the shares had been transferred to persons designated by the German company. These shares do not form part of the property involved in this case; nevertheless the foregoing statement is proper as an explanation of the claim made by the appellees herein.

On September 10, 1914, the German corporation wrote to Briesen & Knauth, as follows:

"We herewith beg to inform you that, for certain reasons which Mr. Bourne will explain to you, we desire to transfer to you on trusteeship twenty-five hundred (2,500) shares of our stock in the Locomotive Superheater Company of your city. We shall be glad if you would be kind enough to accept the trusteeship for these shares on the same conditions as for those shares in said company for which you already act for us in this capacity."

Coincidently with the above, the German corporation wrote to the Locomotive Superheater Company as follows:

"We herewith beg to apprise you that we wish to transfer of our stock in your company twenty-five hundred (2,500) shares to Messrs. Briesen & Knauth of your city, and herewith beg to ask you to transfer this stock on your books at once. We are not able to return you at this time the necessary certificate for transfer, but will do this as soon as possible, and in the meantime we will be responsible for its production and indemnify you against all claims until it is produced."

At the time of these communications the German corporation was the owner of 13,490 shares of the capital stock of the Superheater Company, and these were represented by a single stock certificate. That certificate had come into the hands of the British Public Trustee; hence the inability of the German corporation to forward it to the Superheater Company, in order regularly to complete the foregoing transfers. Nevertheless the transfers were made upon the books of the Superheater Company; indemnity being furnished, and the new certificates being deposited in escrow. The

original certificate for 13,490 shares was afterwards delivered by the British Public Trustee to the Alien Property Custodian.

On December 3, 1915, Antonio Knauth, one of the partners of Briesen & Knauth, died, and the other partners continued business under the firm name of Briesen & Schrenk. Subsequently the German corporation wrote to the Superheater Company as follows:

"We request you hereby to transfer from our stock holdings in your company six thousand and twenty-five (6,025) shares to Messrs. Briesen & Schrenk, 25 Broad street, New York, or to the person or firm designated by that firm. For this transfer we assume the same obligations to you which we assumed in our writing of September 10, 1914.

On January 4, 1916, the German corporation wrote to the Superheater Company as follows:

"We request you hereby to transfer from our stock holdings in your company four thousand two hundred and fifty (4,250) shares to Messrs. Briesen & Schrenk, New York, and declare herewith that for this transfer the same obligation exists on our part as we assumed in our letter to you of September 10, 1914, with respect to the assignment of shares mentioned therein."

These three transfers, covering 12,775 shares in all, were made upon the records of the Superheater Company in the manner above noted. The testimony in the present case contains no explanation of the terms and conditions of the so-called trusts, except the references and implications above set out. It seems probable, however, that one of the purposes entertained by the German company was to secure loans of money upon the stock in this country.

On November 9, 1916, the German corporation purported to sell 12,825 shares of its stock in the Superheater Company to three citizens of Switzerland, namely, Sigg-Fehr, Baumann-Kienast, and Gams. The latter parties, at the time of the transfer, executed a written contract whereby they appointed the firm of Briesen & Schrenk as trustees to take possession of the 12,825 shares (of which 12,775 shares already were held by it), and directed that the firm should be recorded in the stock register of the corporation as the owner thereof. Under this contract the firm was to take part in all general meetings of the Superheater Company, and to vote thereat according to the

instructions of the Swiss principals, or, in the absence of special instructions, to vote according to its own judgment. It was to pay all dividends on the stock as received to a New York bank for account of the Swiss principals and according to their instructions, and to transfer the shares of stock to any persons as directed by the principals: Provided, however, that no such transfers were to be made until the Swiss principals should produce proof to Briesen & Schrenk that they had paid the purchase price of the stock.

The firm of Briesen & Schrenk continued to hold the 12,775 shares of stock until November, 1916, when the Custodian took possession of them, together with dividends consisting of $36,830.39 in cash and $489,000 in Liberty bonds. The property was taken over as assets of the Schmidt'sche Heissdampf Gesellschaft, notwithstanding the alleged transfer by it to the Swiss parties; the Custodian determining that the corporation was an alien enemy under the act. The shares were taken over by notice to the Superheater Company, without any demand upon the plaintiffs; a new certificate being issued by the company accordingly. They have since been sold by the Custodian in due course, and the proceeds are now in his hands. During the time that the firm held the shares, they performed the terms of the foregoing contracts. When the property was seized by the Custodian, they claimed a lien upon it for commissions due to them as trustees of "an expressed trust," under section 3320, New York Code of Civil Procedure, which then read in part as follows:

"*Receiver's Commissions; Cost of Bonds; Trustees' Commissions.* * * * Except as otherwise prescribed in regard to a testamentary trustee, a trustee of an expressed trust is entitled, and two or more trustees of such a trust are entitled, to be apportioned between or among them according to the services rendered by them respectively, as compensation for services as such, over and above expenses, to commissions as follows: For receiving and paying out all sums of principal not exceeding one thousand dollars, at the rate of five per centum. For receiving and paying out any additional sums of principal not exceeding ten thousand dollars, at the rate of two and one-half per centum. For receiving and paying out all sums of principal above eleven thousand dollars, at the rate of one per centum. And for receiving and paying out income

in each year, at the like rates. In all cases a just and reasonable allowance must be made for the necessary expenses actually paid by such trustee or trustees. If the value of the principal of the trust estate or fund equals or exceeds one hundred thousand dollars, each such trustee is entitled to the full commission on principal, and on income for each year, to which a sole trustee is entitled, unless the trustees are more than three, in which case three full commissions at the rate aforesaid must be apportioned between or among them according to the services rendered by them respectively. If the instrument creating the trust provides specific compensation for the services of the trustee or trustees, no other compensation for such services shall be allowed unless the trustee or trustees shall, before receiving any compensation for such services, by a written instrument duly acknowledged, renounce such specific compensation."

The claimants alleged that they had received no compensation for their services as trustees, that there was no stipulation in the contracts as to the amount thereof, and that they relied in that particular upon the provisions of section 3320, supra. They alleged that the stock was of the value of $3,832,500, and the dividends $653,088, and that their commissions, computed under the foregoing section, would be $135,137.64, which they claimed with interest. The Custodian refused to allow this claim, and the present case was brought to recover upon it.

The three Swiss citizens to whom the shares were transferred on November 8, 1916, have commenced a suit in the Supreme Court of the District against the Custodian under section 9 of the Trading with the Enemy Act, for the recovery of the shares or the proceeds thereof. They were made defendants in the present case, and answered, admitting that the plaintiffs were entitled to be compensated for their services as trustees under the last-named contract, payable out of the money in the hands of the Custodian. The plaintiffs also offered in evidence a written consent, executed by the Schmidt'sche Heissdampf Gesellschaft, that the claim of the plaintiffs should be paid by the Custodian. This offer was refused by the court.

Upon the foregoing facts the lower court held that the plaintiffs were entitled to compensation for their services, but that

their claim was not governed by the New York statute. The court dismissed the complaint, and the present appeal was taken from that decision.

[1, 2] Upon the record we hold that in contemplation of law the plaintiffs were in possession of the shares and accumulated dividends in question when these were seized by the Custodian. National Bank v. Watsontown Bank, 105 U. S. 217, 26 L. Ed. 1039; Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647. They were entitled to a lien thereon for their compensation. Rockwood v. Miller, 290 F. 341, 53 App. D. C. 366. That lien was valid against the Custodian, as well as against the original owners of the property. Kahn v. Garvan (D. C.) 263 F. 909. Upon the other hand, the plaintiffs were not such trustees as are contemplated by section 3320, supra, nor is the amount of their compensation governed by the provisions of that section. It is true that the legal title and possession of the shares were vested in them, while the beneficial ownership remained in the German corporation; but the complete and absolute control of the property was retained by the latter, with full power at its own discretion at any time to terminate the arrangement and to compel the retransfer of the property to itself, or to any other person. The arrangement in effect was a mere employment of the plaintiffs as agents, and did not constitute them trustees of an express trust under section 3320. Miami Valley Gas & Fuel Co. v. Mills, 157 App. Div. 542, 142 N. Y. S. 862; In the matter of the Woven Tape Skirt Co., 85 N. Y. 506. Furthermore the contracts neither required nor permitted the plaintiffs to sell or dispose of the assigned shares of stock, unless ordered to do so by the German company. No such order was ever given, nor was any sale or transfer ever made by the plaintiffs. They did not, therefore, perform the service of "receiving and paying out" any "sums of principal," within the

purview of the section. Moreover, the provision in the contracts for a retransfer of the stock upon demand negatives the claim of the plaintiffs; for it is unreasonable to believe that, in case of an immediate retransfer, the German company would have been bound to pay commissions to the plaintiffs upon the value of the stock at the rate provided by the New York statute. That result, however, would follow from the plaintiffs' contention; and, regardless of the willingness of the German corporation under present circumstances to have commissions computed for the plaintiffs under that statute, we are convinced that such a result would be contrary to the original intention of the parties.

[3, 4] It appears that on May 13, 1920, a date subsequent to the seizure of the property by the Custodian, and prior to the commencement of this case, Arthur von Briesen, a member of the firm of Briesen & Schrenk, died, and that the other members of the firm continued in business under the same firm name. It is contended by the appellees that this fact indicates a defect of necessary parties to the present record. We do not agree with this contention, since it appears that the plaintiffs are the surviving partners of the firm. It is true that they did not so designate themselves in this complaint, but that defect, if it be such, may yet be corrected by amendment.

We conclude, upon the present record, that the plaintiffs are entitled to compensation for their services under the contracts, and that the amount thereof, when ascertained, should be adjudged against the Custodian. These conclusions agree with those expressed by the lower court; nevertheless the court dismissed the bill, without undertaking to find the amount actually due to the plaintiffs. We think that this was error, and for this reason the judgment is reversed with costs, and the cause is remanded for further proceedings not inconsistent herewith.