IN THE MATTER OF THE ESTATE OF MARTIN A. ECKES, DECEASED.
MORITZ HEIM, APPELLANT.[1]

March 6, 1925.

No. 24,427.

**Remedy of attorney governed by Trading with the Enemy Act.**

   The Alien Property Custodian having made a demand upon the administrators for the share of an alien enemy legatee in the estate of their decedent, the court properly declined to entertain a subsequent application of the attorney who had represented said legatee in the probate of the will and administration of the estate to have an attorney's lien established and paid out of the share decreed to said legatee. The remedy of the attorney is under section 9 of the Trading with the Enemy Act.

[1]Reported in 202 N. W. 492.

From an order of the probate court for Hennepin county, Dahl, J., denying an application to determine the value of services rendered by Moritz Heim as attorney for the widow of Martin A. Eckes, deceased, and a lien for the same, he appealed to the district court for that county where the order of the probate court was affirmed by Dickinson, J. From that order, Moritz Heim appealed. Affirmed.

*Moritz Heim* and *Thompscn, Hessian & Fletcher*, for appellant.

*Brady, Robertson & Bonner, Frederic D. McCarthy* and *Raymond A. Scallen*, for respondents.

HOLT, J.

This controversy arose on account of the Trading with the Enemy Act of Congress, October 6, 1917, c. 106 (40 St. 411, 425), and subsequent amendatory and supplementary acts.

Martin A. Eckes died testate in Germany in July, 1914. Administrators with the will annexed were appointed in March, 1918, by the probate court of Hennepin county. In October of the same year the Alien Property Custodian made a demand upon them for the right, title and interest in the estate of Katharina Eckes, the widow, who was an alien enemy being then a citizen and resident of Germany. The appellant, Mr. Heim, appeared for the widow in the administration of the estate, advanced money and rendered services as an attorney for her. A few days before the rendition of the final decree, he filed his claim for the services in the probate court, and, on notice to the custodian and Mrs. Eckes, asked to have that court determine the value of his services and the amount of money advanced in order to have a lien therefor. The court denied the application. On appeal to the district court the same result was reached. He appeals from the judgment in the district court.

But for the Trading with the Enemy Act, Mr. Heim would clearly be entitled to an adjudication in the probate court as to the value of his services and expenditures and to have the amount decreed a lien and enforced against the distributive share of his client, the widow. Section 8876, G. S. 1923. However, at the hearing in the

courts below, as well as here, the attorney for the custodian, as well as the one who now appears for the widow, take the position that in virtue of the act of Congress referred to and the action of the President thereunder the whole share of the widow must be turned over to the custodian. We think this accords with the view expressed by the Supreme Court of United States.

In Central Trust Co. v. Garvan, 254 U. S. 554, 41 Sup. Ct. 214, 65 L. ed. 403, the custodian brought suit to obtain possession of what he had determined to be enemy property, and it was held that section 7 of the act authorized immediate seizure of property determined to be alien enemy property, and if the custodian resorted to the courts to get possession the claim or interest of another person thereto could not be adjudicated in such action, but such person would have to protect his rights by proceedings under section 9 of the act, after the property was turned over to the custodian.

Stoehr v. Wallace, 255 U. S. 239, 245, 41 Sup. Ct. 293, 65 L. ed. 604, was treated as a suit under the provision of section 9, and it was held that a determination by the alien property custodian that certain property is enemy property justifies an immediate seizure, using this language: "There is no warrant for saying that the enemy ownership must be determined judicially before the property can be seized, and the practice has been the other way. The present act commits the determination of that question to the President, or the representative through whom he acts, but it does not make his action final. On the contrary, it distinctly reserves to any claimant who is neither an enemy nor an ally of an enemy a right to assert and establish his claim by a suit in equity unembarrassed by the precedent executive determination." This was said in view of the provision of section 9.

To the same effect is Commercial Trust Co. v. Miller, 262 U. S. 51, 56, 43 Sup. Ct. 486, 67 L. ed. 858, which was also a suit by the custodian to obtain possession of property which he had determined to be enemy property, being bonds, etc. held by a trust company for the joint account of a French and a German citizen. The court held that the custodian had the right to seize the whole property, citing Central Union Trust Co. v. Garvan and Stoehr

v. Wallace, supra, and saying: "Those cases decide, as we have also seen, that the suit is of as peremptory character as 'seizure *in pais*' and is the dictate and provision for the emergency of war, not to be defeated or delayed by defenses, its only condition, therefore, being the determination by the Alien Property Custodian that it was enemy property. It was recognized that there is an implication in the act that mistakes may be made, but the act assumes 'that the transfer will take place whether right or wrong.' In other words, it is the view of the opinions that the act provides for an exercise of government, but also provides, as we have said, redress for mistakes in its exercise by the claimant of the property filing a claim under § 9, which, if not yielded to, may be enforced by suit."

In re Miller, 281 F. 764, 772, it is said: "The right to the custody of the property herein involved vested in the Custodian, became a vested right in him on the day when the demand was made and the notice thereof was given. This is so because of the express provision to that effect in the executive order of the President issued on February 26, 1918." An appeal from this decision was dismissed by the Supreme Court of United States in 262 U. S. 760. See also Application of Miller, 288 F. 760, and Koscinski v. White, 286 F. 211, that seizure is effected when the demand is made by the custodian and that appellant's proper remedy is under section 9 of the act.

Based on the well-recognized rule that an alien enemy is permitted when sued in the courts of this country to employ an attorney to defend his rights, appellant argues that the attorney so employed should be protected as to his statutory lien before the property is turned over to alien property custodian. Keppelmann v. Keppelmann, 89 N. J. Eq. 390, 105 Atl. 140, is relied on. That decision was rendered prior to the Federal decisions above cited, and is in some respects at variance with them. The court stated that merely an interest of an alien enemy in property does not warrant its seizure by the custodian. Here the custodian laid claim to the whole of the distributive share of Mrs. Eckes as ascertained by the probate court, but objects to that court establishing and enforcing a sub-

sequently asserted attorney's lien against such share. So does Mrs. Eckes. Although it would appear eminently proper that the court in which appellant rendered his services and which is authorized by our statute (section 8876, G. S. 1923), to fix the value thereof, and enforce it against the distributive share of the widow should be permitted to act, still, as we view the opinions of the Federal courts, the fact that the alien property custodian demanded of the administrators the whole of such share and still insists thereon must lead to the conclusion that the only remedy left appellant is to proceed under section 9 of the act. Even as a claim for debt he can assert his right to redress thereunder. Rockwood v. Miller, 290 F. 341, 53 App. D. C. 366. This result gives appellant a remedy and avoids an unseemly conflict between the administrative acts of the Federal government and state courts.

Affirmed.