WOODSON, ALIEN PROPERTY CUSTODIAN, ET AL. *v.* DEUTSCHE GOLD UND SILBER SCHEIDEAN-STALT VORMALS ROESSLER.

No. 795.  Argued May 3, 1934.—Decided May 28, 1934.

450

*Solicitor General Biggs,* with whom *Assistant Attorney General Sweeney* and *Mr. H. Brian Holland* were on the brief, for petitioners.

*Mr. Richard H. Wilmer,* with whom *Mr. Douglas L. Hatch* was on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

April 15, 1931, respondent brought this suit in the Supreme Court of the District of Columbia against the Alien Property Custodian and the Treasurer of the United States. Petitioners are their successors in office and as such have been substituted in their official capacities for the original defendants. Respondent is a corporation organized under the laws of Germany and at the time of the war between the United States and that country was there engaged in the manufacture and sale of chemicals, etc. It owned property in the United States including shares of stock in American corporations doing like business. Another German corporation, Holzverkohlungs-Industrie Aktiengesellschaft, was then similarly engaged and it also owned property in the United States including shares in one of the American corporations. Pursuant to the Trading with the Enemy Act, 40 Stat. 411, the Custodian seized the shares and other property in this country respectively belonging to these alien enemies. In July, 1930, respondent acquired all the assets of the other German corporation.

Section 24 of the Trading with the Enemy Act [1] authorized the Custodian to pay expenses incurred in

---

[1] Added by § 2, Act of March 4, 1923, 42 Stat. 1516.

obtaining and administering property taken and held by him and required payments to be made out of the property in respect of which the expenses were incurred. The Act of May 16, 1928, 45 Stat. 574, directed that all expenses of the Custodian's office, including his compensation, should be paid from interest and collections of trust funds and other property under his control. Under the Act of March 4, 1923,[2] there was released to each of the German corporations $10,000 of principal and income in the same amount annually thereafter, less one per cent. of the amounts paid between March 4, 1923, and November 1, 1927, and two per cent. of those paid after the date last mentioned. The amount so withheld was $1,400. By the Act of March 10, 1928,[3] the President was authorized to order return of all except 20 per cent. of the principal of money and property to which he should find the claimant entitled. Respondent and the other German corporation filed their claims, which in due course were allowed. The Custodian released to them various sums, retaining the required 20 per cent. and other amounts not here material. Of the amounts released he deducted two per cent., $60,346.52. He also retained out of Treasury interest paid upon the proceeds of the seized property $8,142.31. The total of these deductions is $69,888.83; all was taken by the Custodian to cover the general or administrative expenses of his office.

The amended bill alleges, *inter alia,* the facts above stated and prays an accounting and judgment for the amount so withheld by the Custodian. Defendant in-

---

[2] §§ 9 (b) (10), (h) and 23, added by §§ 1 and 2, Act of March 4, 1923, 42 Stat. 1512, 1513, 1515, 1516.

[3] § 9 (b) (16), (m), added by §§ 11 and 14, Act of March 10, 1928, 45 Stat. 270, 272, and § 23, as amended by § 17, Act of March 10, 1928, 45 Stat. 275.

terposed a motion to dismiss and an answer. The trial court overruled the motion, and on special appeal its decree was affirmed. 62 App.D.C. 344; 68 F. (2d) 391.

March 28, 1934, shortly after this writ was granted, Congress passed an Act [4] containing an amendment to § 24 of the Trading with the Enemy Act, which declares: " No claim shall be filed . . . nor shall any suit be instituted or maintained against the Alien Property Custodian or the Treasurer of the United States, or the United States, under any provisions of law, by any person who was an enemy or ally of enemy as defined in the Trading with the Enemy Act, as amended, . . . nor judgment entered in any such suit heretofore or hereafter instituted, for the recovery of any deduction or deductions, heretofore or hereafter made by the Alien Property Custodian from money or properties, or income therefrom, held by him or by the Treasurer of the United States hereunder, for the general or administrative expenses of the office of the Alien Property Custodian, . . ."

This amendment was intended to forbid, and it is broad enough to cover, the commencement or maintenance of suits such as this. If valid, it requires the decree below to be reversed and the bill to be dismissed. The moneys sued for are a part of proceeds of property that was taken by the Custodian from respondent and the other German corporation. The Trading with the Enemy Act was passed by Congress in the exertion of the war power; its purpose was to weaken enemies by diminishing the sources from which they could obtain aid, and to strengthen this country by adding to resources for the successful prosecution of the war. Section 12 declares that after the end of the war any claim of any enemy to recover money or property received and held by the

[4] 48 Stat. 510.

Custodian or deposited in the United States Treasury " shall be settled as Congress shall direct." 40 Stat. 424. While this suggests that confiscation was not effected or intended, it plainly shows that Congress reserved to itself full freedom at any time to dispose of the property as might be deemed expedient and to deal with claimants as it should deem to be in accordance with right and justice, having regard to the conditions and circumstances that might arise during and after the war. It is clear the enemy owners were divested of every right in respect of property taken and held under the Act. *United States* v. *Chemical Foundation,* 272 U.S. 1, 9–11.

The original Act, coupled with the later Acts of March 4, 1923, and May 16, 1928, plainly discloses a reservation to Congress of power to appropriate the property seized or its proceeds, as far as might be deemed necessary, to the payment of expenses incurred in the seizure and subsequent administration. The funds here in question are proceeds which were deducted for that purpose when payments were made from time to time to the enemy owner. As respects property or proceeds so retained by the Custodian there is no room to doubt that Congress had full power to cause it to be applied to the payment of such expenses. And, of course, Congress had ample power to ratify deductions made by the Custodian to cover such expenses. This is in effect what was done by the Act of March 28, 1934. True, it forbade the commencement or maintenance of a suit to recover funds so deducted, but this merely reflects and emphasizes the purpose to sanction and ratify the deductions by the Custodian, and in such circumstances does not deprive the respondent of any vested interest.

It follows that the Act of March 28, 1934, infringes no constitutional right of respondent. The decree of the Court of Appeals is reversed and the cause remanded to

the Supreme Court of the District of Columbia with directions to that court to dismiss the bill.

*Reversed.*