Argued May 12; affirmed May 25, 1948

In re ESTATE OF ELIZABETH MILLER, deceased,
CLARK, Attorney General, v. CLOSTERMANN

193 P. (2d) 539

*Robert G. Clostermann,* of Portland, argued the cause and filed a brief for appellant.

*Gene B. Conklin,* Assistant United States Attorney for the District of Oregon, of Portland, argued the cause for respondent. On the brief were Henry L. Hess, United States Attorney for the District of Oregon, Victor E. Harr, Assistant United States Attorney for the District of Oregon, and Floyd D. Hamilton, Assistant United States Attorney for the District of Oregon, all of Portland.

KELLY, J.

On or about October 2, 1941, Elizabeth Miller died in Portland, Multnomah County, Oregon, leaving a last will and testament dated September 2, 1941. On October 14, 1941, said will was admitted to probate and Eugene H. Dowling was appointed executor.

Among the sixteen specific bequests made by said will were the following:

To Anna Blocher, a sister, the sum of $3,000.00, to Katherine Balzer, a sister, the sum of $3,000.00, and to Lina Petri, a sister, the sum of $5,000.00. These three sisters of the decedent were also named in said will as residuary legatees. Katherine Balzer and Lina Petri, having died, the residuary share of Anna Blocher was determined to be $11,196.09. The three sisters of decedent to whom the bequests above enumerated were made were nationals and residents of Germany. The fund created by said will in their favor amounted in all to $22,196.09.

On August 31, 1942, in this proceeding there was filed in the circuit court of Multnomah County an order approving the appearance of beneficiaries by virtue of which Robert G. Clostermann, as attorney in fact and also attorney of record, appeared for said Anna Blocher, Katherine Balzer and Lina Petri.

On June 8, 1943, said Robert G. Clostermann filed in said circuit court his notice of attorney's lien, claiming a lien against said specific legacies and also the

net residuary shares to which said Anna Blocher, Katherine Balzer and Lina Petri were entitled.

The amount claimed as fees by said lien was fifteen per cent of the total of $22,196.09. Said claim of lien was afterward reduced to five per cent of said total amount.

On June 19, 1944, James E. Markham, who was at that time the Alien Property Custodian, issued his vesting order by virtue of which there was vested in the United States all right, title, interest and claim of any kind or character whatsoever of said Anna Blocher, Katherine Balzer and Lina Petri, and each of them in and to the estate of said Elizabeth Miller, deceased.

On January 29, 1945, Mr. Clostermann filed a petition with said circuit court in this proceeding wherein he asked for an order fixing his attorney's fees based upon said claim of five per cent of the total sum of $22,196.09.

We quote paragraph IX of said petition and the prayer thereof:

"IX

In considering this petition this court may wish to consider the following questions:—

1. In view of said vesting order should the executor pay and deliver said distributive shares to the Alien Property Custodian and thereupon let your petitioner file his claim for said fees with said custodian?

2. Or should the court determine the fee and direct the executor by appropriate order to hold out said fee from the said distributive shares, and deliver the residue to the Alien Property Custodian?

3. Would this court entertain jurisdiction in this matter in view of the fact that any fee payable to your petitioner, Robert G. Clostermann, would not

come out of the funds of the estate, but rather out of the distributive shares coming to said beneficiaries?

Wherefore your petitioner respectfully prays for an order of this court, should this court take jurisdiction, fixing the fees to be allowed your petitioner herein.''

On the 3rd of July, 1945, James E. Markham, who, as stated, was then the Alien Property Custodian for the United States of America, by and through Carl C. Donaugh, who was then United States Attorney for the District of Oregon, and Victor E. Harr, Assistant United States Attorney, filed objections to Mr. Clostermann's petition for an order fixing his attorney's fees.

On the 8th day of August, 1947, the following order, omitting the title was entered by the circuit court in this proceeding:

''There came on for hearing before the above entitled court, the application of Robert G. Clostermann for an order for the allowance of attorney's fees for services rendered for and on behalf of certain nationals and residents of Germany to-wit: Anna Blocher, Katherine Balzer and Lina Petri, and objections to said application having been filed by James E. Markham, then Alien Property Custodian for the United States of America, and the court having heard arguments of counsel and having considered briefs filed for and on behalf of said Alien Property Custodian and petitioner herein and it appearing to the court that it is without jurisdiction to allow or to direct the executor herein to pay to petitioner Robert G. Clostermann his claim against the estate of decedent herein pursuant to his contract with the said German Nationals from the bequest to them by the decedent, which said bequest is subject to the vesting order of the Alien Property

456

Custodian heretofore filed herein and being fully advised in the premises, it is:

Ordered that the petition of Robert G. Clostermann for the fixing and allowing of attorney's fees for services performed for Anna Blocher, Katherine Balzer, and Lina Petri be and the same is hereby denied.

Made and entered this 8th day of August, 1947.

Ashby C. Dickson, Judge.''

From the above quoted order, Mr. Clostermann has appealed.

The question is whether the circuit court of Multnomah County, Oregon, had the jurisdiction to make the order sought by Mr. Clostermann.

We think that the vesting order of June 19, 1944, issued as above stated by Mr. Markham, who was then the Alien Property Custodian, had the effect to divest the circuit court of Multnomah County, Oregon, of jurisdiction of the subject matter thereof.

Mr. Clostermann's lien is upon a fund now vested in the United States by said order of June 19, 1944. This order had been in effect more than seven months when he filed his petition for an order fixing the amount of his lien.

The act of Congress known as the Trading with Enemy Act is controlling here. The provisions of said act applicable to this proceeding are found in subparagraph (a) of section 9 thereof as follows:

"Any person not an enemy or ally of enemy claiming any interest, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof

shall have been conveyed, transferred, assigned, delivered or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine said claimant is entitled: Provided, That no such order by the President shall bar any person from the prosecution or any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title or debt so claimed, and if so established the court shall order the payment, conveyance. transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to which the court shall determine said claimant is entitled. If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States, as provided in this Act, and until any final

judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment or delivery by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated." U. S. C. A., Title 50, Sec. 9, p. 241.

The final provision of subparagraph (c) of section 7 of said Trading with Enemy Act, in part is as follows:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or required so to be, or seized by him shall be that provided by the terms of this Act, * * * * *."
U. S. C. A., Title 50, Sec. 7, p. 211.

In an opinion by the Surrogates Court of Queen County, New York, dealing with facts very similar to those here involved, we find support for our approval of the course taken by the circuit court of Multnomah County. *In re Mangels' Will, In re Waller*, 68 N. Y. S. 2d 80. It is there stated that enemy property vested by the custodian becomes the property of the United States, citing *Cummings v. Deutsche Bank*, 300 U. S. 115, 57, Sup. Ct. Rep. 359, 81 L. Ed. 545, from which we quote as follows:

"By exertion of the war power, and untrammeled by the due process or just compensation clause, Congress enacted laws directing seizure, use, and disposition of property in this country belonging to subjects of the enemy. Alien enemy owners were divested of every right in respect of the money and property seized and held by the Custodian under the Trading with the Enemy Act. United States v. Chemical Foundation, 272 U. S. 1, 9-11, 47 S. Ct. 1, 4, 71 L. Ed. 131, Woodson v. Deutsche, Etc. Vormals, 292 U. S. 449, 454, 54 S. Ct. 804, 805, 78 L. Ed.

1357. The title acquired by the United States was absolute and unaffected by definition of duties or limitations upon the power of·the Custodian or the Treasurer of the United States. Congress reserved to itself freedom at any time to dispose of the property as deemed expedient and right under circumstances that might arise during and after the war. Legislative history and terms of measures passed in relation to alien enemy property clearly disclose that from the beginning Congress intended after the war justly to deal with former owners and, by restitution or compensation in whole or in part, to ameliorate hardships falling upon them as a result of the seizure of their property. But that intention detracted nothing from title acquired by the United States or its power to retain or dispose of the property upon such terms and conditions as from time to time Congress might direct. As the taking left in enemy owners no beneficial right to, or interest in, the property, the United States did not take or hold as trustee for their benefit.'' *Cummings v. Deutsche Bank,* supra.

Whatever jurisdiction the circuit court of Multnomah County had with respect to the bequests in suit in regard to subjecting them to Mr. Clostermann's claim, terminated upon the issuance of the vesting order by the Alien Property Custodian.

The order of the circuit court denying Mr. Clostermann's petition for an order fixing his attorney's fees for the purpose of enabling him to assert a lien upon a claim against said bequests is affirmed without prejudice however to his right to assert his claim and further proceed in accordance with the provisions of the Trading with Enemy Act aforesaid, and it is so ordered.

It is further ordered that neither party to this appeal shall recover costs or disbursements.

The decree of the circuit court is affirmed without prejudice.