[Civ. No. 15622. First Dist., Div. Two. Dec. 22, 1953.]

PARAMOUNT PICTURES, INC., Plaintiff, v. MAURICE C. SPARLING, as Superintendent of Banks, etc., Defendant and Respondent; O'MELVENY & MYERS et al., Appellants; HERBERT BROWNELL, JR., Attorney General of the United States, as Successor to Alien Property Custodian, Intervener and Respondent.

Homer I. Mitchell, Walter S. Hilborn and Herman F. Selvin for Appellants.

S. M. Saroyan for Defendant and Respondent.

Lloyd H. Burke, U. S. Attorney for Northern District of California, Valentine C. Hammack, Special Assistant to Attorney General, Mary Eschweiler and John F. Cushman, Attorneys, Office of Alien Property, Department of Justice, for Intervener and Respondent.

DOOLING, J.—This is an appeal from an order denying two motions to fix and award reasonable attorneys' fees to plaintiffs' counsel and to order such fees paid out of the assets in the hands of respondent Superintendent of Banks (hereinafter called the superintendent) which are available for the payment of interest upon the approved claims of depositors or creditors of The Yokohama Specie Bank, Ltd. (hereinafter called the bank). The theory of appellants is that in the main litigation they established the right of all such creditors and depositors to interest as a class and that following the settled equitable principle an award may be made for attorneys' fees to be paid from the common fund so made available for the payment of such interest. (*Adams* v. *California Mut. B. & L. Assn.*, 18 Cal.2d 487 [116 P.2d 75] ; *Winslow* v. *Harold G. Ferguson Corp.*, 25 Cal.2d 274 [153 P.2d 714] ; *Estate of Marré*, 18 Cal.2d 191 [114 P.2d 591] ; *Ticonic Nat. Bank* v. *Sprague*, 303 U.S. 406 [58 S.Ct. 612, 82 L.Ed. 926].)

A brief history of the main litigation in which the services of these attorneys were rendered will be helpful to a proper disposition of the points argued on this appeal. Following the Japanese attack on Pearl Harbor the respondent superintendent assumed control of the bank and its assets and

thereafter the United States Treasury Department licensed the superintendent to liquidate the bank and to act as conservator. In due course appellants, who were large depositors, presented their claims to the superintendent for the principal amounts of their deposits with interest thereon. The superintendent allowed the claims as to principal but rejected them as to interest. Appellants thereupon commenced these actions seeking a determination that they were entitled to interest out of any assets remaining after the payment of principal. The Alien Property Custodian (hereinafter called the custodian), who had vested the bank's assets, intervened and opposed the payment of interest. The superintendent by answer alleged the conflicting claims of the plaintiffs and the custodian and requested the court to adjudicate their adverse claims for his protection. On the issues so made the cases went to trial and the court entered its judgments determining the plaintiffs' right to interest. The superintendent and the custodian appealed and the judgments were affirmed by this court in *Paramount Pictures, Inc.* v. *Sparling,* 93 Cal.App.2d 768 [209 P.2d 968]. The superintendent and the custodian petitioned the Supreme Court of California for a hearing and those petitions were denied. (93 Cal.App.2d 777.) The superintendent and the custodian then filed petitions for certiorari in the United States Supreme Court, which petitions were also denied. (*McGrath* v. *Paramount Pictures, Inc.,* 339 U.S. 953 [70 S.Ct. 838, 94 L.Ed. 1366]; *Sparling* v. *Paramount Pictures, Inc.,* 339 U.S. 953 [70 S.Ct. 839, 94 L.Ed. 1366].)

One of the controlling issues in these cases was the claim by the custodian that under section 5 (b) (2) of the Trading With the Enemy Act the payment of the principal of the deposits when due was excused and for this reason the plaintiffs were not entitled to interest. The portion of that section relied upon reads: "No person shall be held liable in any court for or in respect to anything done or omitted in good faith in connection with the administration of, or in pursuance of and in reliance on, this subdivision, or any rule, regulation, instruction, or direction issued hereunder."

The issue as made was whether the failure of the interned officers of the bank to apply to the Secretary of the Treasury for a special license to pay its depositors showed an absence of "good faith" within the meaning of the quoted section. After a protracted trial the superior court found (quoting from *Paramount Pictures, Inc.* v. *Sparling, supra,*

93 Cal.App.2d at p. 773): "that there was nothing to prevent these officers from applying for a special license to pay the creditors of the bank or these plaintiffs and as a conclusion of law that their failure to do so showed an absence of 'good faith' of section 5 (b) (2) of the Trading With the Enemy Act."

This is a question which the trial court could easily under the evidence have resolved the other way and if it had done so that would have been an end of the case for plaintiffs. Indeed, this fact question was so close that on the main appeal the custodian and the superintendent argued with quite persuasive force that the finding and conclusion of the trial court on this issue found no support in the evidence and we sustained the finding on the narrow ground that "(t)he inferences and conclusions from the evidence are for the trial court to draw" (*Paramount Pictures, Inc.* v. *Sparling, supra*, 93 Cal.App.2d at p. 774), a basis upon which a contrary finding would have been as well affirmed if the trial court had seen fit to make such finding.

In view of this the position taken by the superintendent before the trial court on this factual issue and thereafter consistently urged by him at every stage of the appellate proceedings is important in view of the basis of the trial court's order here under appeal and the arguments made by respondents to support it. That position is clearly stated in the superintendent's petition to the Supreme Court of the United States for a writ of certiorari to this court after we had affirmed the judgment by our opinion in *Paramount Pictures, Inc.* v. *Sparling, supra*, 93 Cal.App.2d 768. We quote from page 11 of that petition:

"The Superintendent of Banks of the State of California, both in the trial court and in his briefs before the District Court of Appeal, and also in his petition for a hearing by the Supreme Court of the State of California, has consistently maintained that the officers of the bank, interned as they were as alien enemies, and with the bank's license to do business revoked by the United States Government, and possession of the bank seized by the Superintendent of Banks of the State of California, could not reasonably be expected to take steps to secure a license to reopen the bank and pay depositors. It is submitted that the failure of the bank's officers to apply for such a license cannot be held to constitute bad faith."

Having flatly taken this position in the trial court and maintained it at all stages of the proceedings both in that court and throughout every step of the appeal it is too clear for dispute that on this crucial issue of the case but for the interposition of appellants there would have been no one to urge upon the trial court the making of the finding that was actually made on this issue or to present the argument which was successfully made in its support by counsel for appellants when it was attacked by the superintendent and the custodian upon appeal.

This in our judgment clearly distinguishes this case from *In re Pacific Coast Bldg.-Loan Assn.*, 15 Cal.2d 155 [99 P.2d 261], upon the authority of which alone the trial court based its order denying the motions for counsel fees. In the Pacific Coast case the Supreme Court affirmed an order denying a motion for attorneys' fees to be paid out of the assets in the hands of the Building and Loan Commissioner as liquidator. The order there affirmed expressly determined "that this proceeding is not of the character which entitles a successful group to recover attorneys' fees from the common fund and upon that ground alone the application was denied." (*In re Pacific Coast Bldg.-Loan Assn., supra,* 15 Cal.2d at p. 157.) While the Supreme Court discussed other factors present in that case the determinative fact was that the commissioner himself not only took an impartial position in the proceeding but fully and fairly advised the court on the issues of fact and law. Indeed, the complaint urged against the commissioner's conduct in that proceeding was that "the commissioner took a neutral position" and "did not take sides." (*In re Pacific Coast Bldg.-Loan Assn., supra,* 15 Cal.2d at p. 159.) The Supreme Court held that where a statutory officer in charge of a fund, without advocacy, fairly and impartially presents to the court the issues determinative of the proper disposition of the fund a claimant who intervenes on the successful side is not entitled to an award of counsel fees from the fund. The court said at page 160:

"Indeed, appellants must really rest upon the narrow ground that their legal presentation was more able, more convincing, and therefore more valuable, than that of the commissioner. But this cannot be the basis for the award of fees to private counsel where the services are already subject to performance by a public officer and official counsel, and these parties have properly performed their duties."

That the rule is otherwise where the public officer in charge of the fund takes a position opposed to a class of claimants is shown by *Adams* v. *California Mut. B. & L. Assn., supra,* 18 Cal.2d 487, 489, where the court cited the Pacific Coast case in support of the following statement:

"Inasmuch as these are representative actions . . . any award of counsel fees should be paid out of that portion of the fund recovered by those for whose benefit these actions were brought."

We do not regard it as important that the superintendent in his answer purported to take a neutral position. On a determinative issue his position was not in fact neutral and if he had succeeded in persuading the trial court of the correctness of his position on that issue its finding and judgment would have gone the other way. We do not question the superintendent's good faith, but if in good faith the superintendent is led to take a position in opposition to that urged by a claimant who convinces the courts, he cannot, with any show of reason, argue that the claimant's legal representation was unnecessary or that the same result would have followed his urging upon the court of the opposite position only. To be truly neutral he must present both sides and leave the free choice between them to the judgment of the court, and not as he himself stated in his petition for certiorari above quoted take an advocate's position against these claimants on a decisive question of fact and law "both in the trial court and in his briefs before the District Court of Appeal, and also in his petition for a hearing by the Supreme Court of the State of California."

Faced with the fact that he did consistently support this defense of the custodian and did place himself squarely in opposition to the plaintiffs thereon, the superintendent argues before us that the trial court did not in fact determine that the case was one in which the court was without power to award counsel fees under the authority of the Pacific Coast case, but rather in the exercise of its discretionary powers determined not to award such fees in view of all the facts and circumstances of the particular case. We cannot so read the record. The Pacific Coast case was not concerned with the free play of discretionary power. It plainly held as a matter of law that the court is without power to award such fees where a public official in charge of a fund submits to the court the conflicting claims upon the fund and takes a neutral position at the same time adequately presenting the

issues and the law applicable thereto. The controlling factor in this holding appears in the following quotation from the opinion in that case:

"It is quite obvious that he had to take an impartial position, seeking that form of distribution which was in accord with legal and equitable principles. And there is nothing in the record to show that the court was not fully advised on the law by counsel for the commissioner, despite the fact that they did not appear as advocates of either group of claimants."

It is thus obvious that the trial court was in error in the basis upon which it grounded its order (we quote from the order here appealed from): "by reason of the law applicable herein the Court concludes that its power and discretion to award attorneys' fees herein should be guided by the principles declared in *In re Pacific Coast Building & Loan Assn.*, 15 Cal.(2d) 155 [99 P.2d 261], and applied to a *substantially similar situation.*" (Emphasis ours.) That the situation was not substantially similar appears from our previous discussion. In the controlling feature of impartiality of the custodian of the fund the situations could not have been more dissimilar. Feeling himself controlled by the rule of the Pacific Coast case it is clear that the trial judge did not and could not exercise a free discretion in determining whether or not counsel fees should be awarded.

We are not impressed by the contention that the commencing and prosecution of these actions was not necessary to establish the rights of depositors and creditors as a class to receive interest. It is true that before these actions were filed the attorney for the superintendent in a letter stated: "In the remote possibility that a surplus should exist after payment of all creditors in full, proper proceedings will be instituted, *after consent and approval is first had and obtained from the Alien Property Custodian,* for the purpose of obtaining a judicial determination on the question of interest." (Emphasis ours.) The emphasized condition was one upon which the claimants could not safely rely. There was no assurance that the custodian, under whose license the superintendent was acting, would ever give his consent or approval to such a proceeding in view of his continued and vigorous assertion that none of the depositors was entitled to the payment of interest, and if such consent was not given it is not disputed that an action by these claimants upon their rejected claims for interest would have been barred by the

statute of limitations which had only a short time to run when their actions were filed.

On the whole case it is clear that counsel for the plaintiffs rendered services which substantially benefited all the depositors and creditors as a class by establishing their right to receive interest, that they did this over the determined opposition of the superintendent on at least one issue decisive of that right, that left to representation by the superintendent alone that issue would almost certainly have been decided the other way, and that the case is therefore one in which the court has the power to allow counsel fees from the fund available for the payment of interest, and the court should exercise its free discretion in determining that question.

■ The Attorney General of the United States as successor to the custodian, who vested the claims of certain depositors, argues that as against those vested accounts the court is without power to make an award for counsel fees. These accounts upon vesting became the property of the United States of America. (*Cummings* v. *Deutsche Bank,* 300 U.S. 115, 120-121 [57 S.Ct. 359, 81 L.Ed. 545].) Under the Trading With the Enemy Act all proceedings to enforce payments out of vested property must be brought under that act. (50 U.S.C.A.App., §§ 7(c), 9.) ■ Any claim for attorneys' fees to be paid out of vested property must be asserted under the Trading With the Enemy Act and cannot be enforced in a proceeding of this character. (*Todeva* v. *Oliver Iron Mining Co.,* 232 Minn. 422 [45 N.W.2d 782]; *In re Eckes' Estate,* 162 Minn. 226 [202 N.W. 492]; *In re Miller's Estate,* 183 Ore. 452 [193 P.2d 539]; *In re Mangels' Will,* 68 N.Y.S.2d 80; *Blank* v. *Clark,* 79 F.Supp. 373.)

The order is reversed with directions to the court to hear and determine the motions on their merits, and that if an award be made it shall not run against any interest payable to the Attorney General of the United States pursuant to the vesting of any account in him as successor to the Alien Property Custodian.

Nourse, P. J., and Goodell, J., concurred.