# IN THE MATTER OF THE TRUST ESTATE OF H. RENJES, DECEASED.

## No. 3052.

ARGUED MAY 28, 1957.            DECIDED OCTOBER 23, 1957.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

152

This case involves a claim to the delivery of one-half of the property held by Herbert Melville Dowsett as trustee of a trust administered under the supervision of the Circuit Court of the First Circuit in an equity cause entitled "In the Matter of the Trust Estate of H. Renjes, Deceased," being Equity No. 1953 of the records of the court. The claimants are Elsie Becker, daughter of Else Renjes Becker, and the Attorney General of the United States, successor to the Alien Property Custodian, acting under the authority of the Trading with the Enemy Act, as amended. (40 Stat. 411, 50 U. S. C. App. § 1 *et seq.*) The Trading with the Enemy Act, as amended, will hereafter be referred to as the "Act." The term "custodian" will be used to refer to the Alien Property Custodian or the Attorney General, as his successor, and the term "trust estate" will be used to refer to the property held by Herbert Melville Dowsett as trustee.

The case also involves the question as to whether Elsie's attorneys may have their fees paid out of the trust estate.

Heinrich Hermann Renjes died in Germany in 1911, testate as to his property in Hawaii. The first article of the will provided as follows: "I give, devise and bequeath all property belonging to me in the Hawaiian Islands, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled or have any right or claim at the time of my death to my wife, Elizabeth Renjes, upon trust for and during the term of her natural life and without any liability on her part of accounting for the income of the same, and after her death I give, devise and bequeath the same to my daughter Else Renjes."

The will was probated in the Circuit Court of the First Circuit in a probate proceeding entitled "In the Matter of the Estate of Heinrich Hermann Renjes, Deceased," being Probate No. 4432 of the records of the court. The probate

proceeding was closed in 1913 with the delivery of the testator's estate to the widow.

The record on appeal does not show what happened to the testator's estate between the time of its delivery to the widow and June 8, 1953. On the latter date, the trustee filed in Equity No. 1953 a document entitled "Petition of Trustee for Approval of Final Account, Distribution of Estate and for Discharge." In the petition, he alleged that he was the trustee of the trust created under the will of Heinrich Hermann Renjes; that Elizabeth Renjes, the life beneficiary of the trust, died in Honolulu on December 31, 1952; that Else Renjes to whom the testator gave the remainder interest of the trust, died in Germany in 1930; that two daughters of Else Renjes survived her, Ingeborg von Finckh McKee of Connecticut, a daughter by her first marriage to one von Finckh, and Elsie Becker, a daughter by her second marriage to Carl Alfred Becker. He prayed for an order of distribution of the trust estate to Ingeborg and Elsie in equal shares. We conclude from the petition and matters appearing in subsequent proceedings in Equity No. 1953 that the trust estate consists of the testator's estate which was delivered to the widow at the close of the probate proceeding and reinvestments of such property.

Shortly before the trustee filed his petition, the custodian issued Vesting Order No. 19302 under the authority of the Act and the executive orders issued thereunder. In the order the custodian found:

"1. That the domiciliary personal representatives, heirs-at-law, next-of-kin, legatees and distributees, names unknown, of Else Becker, nee Renjes, deceased, including but not limited to the domiciliary personal representatives, heirs-at-law, next-of-kin, legatees and distributees, names unknown, of Carl Alfred Becker, deceased, except Ingeborg von Finckh McKee, who there is reasonable cause to believe are and, on or since

December 11, 1941, and prior to January 1, 1947, were residents of Germany, are and prior to January 1, 1947, were nationals of a designated enemy country (Germany);

"2. That all right, title, interest and claim of any kind or character whatsoever of the persons identified in subparagraph 1 hereof, except Ingeborg von Finchk McKee, in and to the Estate of H. Renjes, deceased, is property which is and prior to January 1, 1947, was within the United States owned or controlled by, payable or deliverable to, held on behalf of or on account of, or owing to or which is evidence of ownership or control by the aforesaid nationals of a designated enemy country (Germany);

"3. That such property is in the process of administration by Herbert Melville Dowsett, as testamentary trustee of the last will and testament of H. Renjes, deceased acting under the judicial supervision of the First Circuit Court of the Territory of Hawaii;"

and pursuant to such findings, determined that the national interest of the United States required that the persons identified in paragraph 1 be treated as persons who, on the date of the order and before January 1, 1947, were nationals of a designated enemy country. Upon such findings and determination, he vested the property described in paragraphs 2 and 3. The order was dated April 15, 1953, and became effective on the following day, when it was filed with the Division of the Federal Register.

By the description in paragraph 1, the custodian covered every person who might conceivably succeed to the interest of Else Renjes Becker, directly or through her successor in interest. The domiciliary personal representatives, heirs-at-law, next-of-kin, legatees and distributees of Carl Alfred Becker are mentioned because according to the record in the ancillary probate proceeding in the Circuit

Court of the First Circuit entitled "In the Matter of the Estate of Else Ululani Renjes Becker, Deceased," being Probate No. 8190 of the records of the court, it appears that Carl Alfred Becker had an interest in the estate of his wife. The custodian is authorized to describe the persons whose property is vested in such all-inclusive and general terms. (*Estate of Stagnaro,* 107 Cal. App. [2d] 98, 236 P. [2d] 593)

After the trustee filed his petition, the following pleadings were filed in the same cause:

(a) Petition of the Attorney General of the United States as Successor to the Alien Property Custodian, filed July 6, 1953, in which the custodian alleged the issuance of Vesting Order No. 19302 and prayed for an order directing the payment to him of the portion of the trust estate alleged in the trustee's petition to be payable to Elsie;

(b) Demurrer, filed August 21, 1953, in which the trustee prayed for dismissal of the custodian's petition for lack of jurisdiction in the court to adjudge the issue involved in the petition;

(c) Petition by Intervention of Elsie Becker for Distribution of One-Half of Estate to Her, filed November 5, 1953, pursuant to Order Permitting Intervention of the same date, in which Elsie by her attorneys, prayed for an order directing the payment of one-half of the trust estate to her;

(d) Motion of the Attorney General of the United States to Vacate and Set Aside the Order of November 5, 1953, and to Strike from the Record the "Petition by Intervention of Elsie Becker," filed November 25, 1953, in which the custodian moved that the order be set aside and that the petition be struck from the record on the grounds that the order was obtained without notice to him, the petition was not in fact the petition of Elsie, and that Elsie had no interest in the trust estate because her interest was

vested in the custodian by Vesting Order No. 19302;

(e) Order, filed June 22, 1954, granting leave to the trustee to withdraw his demurrer, to Elsie to file an amended petition, and to the custodian to file his pleading responsive to the amended petition;

(f) Amended Petition of Elsie Becker for Distribution of One-Half of Estate to Her, filed June 22, 1954, which was signed personally by Elsie and contained the same prayer as in the original petition;

(g) Motion of Attorney General of the United States to Strike from the Record Intervention of Elsie Becker, filed July 20, 1954, in which the custodian moved that all orders giving Elsie leave to file her original petition and amended petition be set aside and that an order be entered striking from the record any intervention by Elsie on the ground that she had no interest in the trust estate;

(h) Petition for Order Authorizing Partial Distribution of Trust Estate, filed July 27, 1954, in which the trustee prayed for an order of distribution of one-half of the trust estate to Ingeborg on the ground that there was no dispute as to her right to such portion;

(i) Motion to Dismiss Petition of the Attorney General of the United States as Successor to the Alien Property Custodian, filed August 13, 1954, in which Elsie moved to dismiss the custodian's petition filed on July 6, 1953, on the ground that Vesting Order No. 19302 was illegally issued and vested nothing;

(j) Motion of Roger E. Brooks and Shiro Kashiwa for Attorneys' Fees, filed June 17, 1955, in which Elsie's attorneys moved for an order awarding reasonable attorneys' fees to them from the remaining assets of the trust estate on the ground that their services were rendered for the benefit of the trust estate.

On the trustee's petition for partial distribution, after a hearing at which both the custodian and Elsie were rep-

resented, the court entered an "Order Approving Accounts, Determining Fees and Commissions and For Partial Distribution of Trust Estate," in which it found that upon the death of the testator's widow the trust estate became distributable one-half to Ingeborg and one-half to the custodian or to Elsie, and ordered the payment to Ingeborg of one-half of the trust estate inasmuch as the dispute between the custodian and Elsie did not appear to involve such share. The order was filed on January 18, 1955.

With reference to the dispute between the custodian and Elsie, the matter was submitted to the court on the pleadings, the records in Probate No. 4432 and Probate No. 8190, and the testimony of the trustee at the hearing on his petition for partial distribution. The court entered an order granting the custodian's motion to strike Elsie's intervention and denying Elsie's motion to dismiss the custodian's petition. The court also entered orders denying Elsie's subsequent motion for new trial and the motion of Elsie's attorneys for attorneys' fees. The case is before this court on Elsie's appeal from such orders.

In her specification of errors, Elsie sets forth twenty-one alleged errors committed by the court below. These may be grouped under three main categories, namely, those relating to alleged procedural irregularity, those relating to the efficacy of the vesting order, and those relating to the denial of attorneys' fees.

Elsie claims that the court erred in granting the custodian's motion to strike her intervention in that she was an indispensable party to the proceeding, that she was permitted to intervene by an order of the court of which the custodian had knowledge, and that the motion to strike was not a pleading responsive to her petition which the custodian was granted leave to file.

Section 12 (b) of Hawaii Rules of Civil Procedure requires that every defense be asserted in a responsive

pleading, except certain enumerated defenses which may be made by motion. One of such defenses is failure to state a claim upon which relief can be granted. The custodian's motion to strike Elsie's intervention is in substance a motion to dismiss for failure to state a claim upon which relief can be granted. So is Elsie's motion to dismiss the custodian's petition. One is denominated a motion to strike and the other as a motion to dismiss. Technically a motion to strike is a motion made under rule 12 (f). However, the labeling is not controlling. Motions to strike have been construed as motions to dismiss in numerous cases. A few may be cited. (*Shimkus* v. *Nicolais,* 113 Fed. Supp. 339; *Arington* v. *Phelps,* 79 Fed. Supp. 295; *Hartford-Empire Co.* v. *Glenshaw Glass Co.,* 47 Fed. Supp. 711)

It is also provided in rule 12 (b) that, if on a motion asserting the defense to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56. Under rule 56 summary judgment may be rendered if the pleadings and the additional matters presented to and not excluded by the court show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Here, in addition to the pleadings, the records in Probate No. 4432 and Probate No. 8190 and the trustee's testimony at the hearing on his petition for partial distribution were presented to and considered by the court in arriving at its decision. The pleadings and such additional matters do not show any genuine issue as to any material fact.

In form the order granting the custodian's motion to strike Elsie's intervention and denying Elsie's motion to dismiss the custodian's petition denied Elsie a day in court. But Elsie in fact was given a full hearing. That is shown

by the following statement in the decision: "The court is convinced, however, and so holds, that the Custodian and Elsie Becker have, by their respective motions properly contested the right of the other to appear in these proceedings and receive distribution of the remaining undistributed one-half of the trust estate. The other one-half of the trust estate has previously been distributed to Ingeborg von Finckh McKee, Herman Renjes's other granddaughter, an American citizen residing in the United States, without contest." Thus, the order in substance is a summary judgment in favor of the custodian and against Elsie.

Preliminary to a consideration of the efficacy of the vesting order in this case to vest the share of the trust estate in dispute, the nature of a vesting order may be briefly considered.

The statutory basis for the issuance of vesting orders is section 5 (b) of the Act which provides that during the time of war or during any other period of national emergency declared by the President any property or interest of enemy nationals shall vest as directed by the President in such person as may be designated by the President and shall be dealt with in the interest of and for the benefit of the United States. The President has, by executive orders, designated the custodian to be the person in whom such property or interest shall vest and delegated to him the powers granted under the section.

A vesting order is effective upon its filing with the Division of the Federal Register. (8 C. F. R., 1952 Rev., § 504.1) It does not effect a change in the ownership of the vested property. It merely effects a sequestration, that is, gives to the custodian the right to obtain the possession, of the property.

For the purpose of obtaining the possession of vested property, the custodian's findings in a vesting order are

conclusive "whether right or wrong." (*Commercial Trust Co.* v. *Miller,* 262 U. S. 51; *Central Union Trust Co.* v. *Garvan,* 254 U. S. 554; *Koehler* v. *Clark,* 170 F. [2d] 779) The justification for the grant of such summary authority to the custodian lies in the fact that it is a war measure in which speed of execution is of the essence. Such grant of authority is constitutional because a person, not an enemy or ally of an enemy, who has a valid claim to any vested property may have his right determined under section 9 (a) of the Act. In a proceeding under section 9 (a) a claimant may have his right determined "unembarrassed by the precedent executive determination." (*Stoehr* v. *Wallace,* 255 U. S. 239)

In *Kahn* v. *Garvan,* 263 Fed. 909, at page 916, Judge Learned Hand aptly described the basic scheme of the Act as follows: "The act intends the immediate reduction to possession of all property which the Custodian shall decide to be enemy property; all questions arising from his mistakes, or even from his oppressive or arbitrary action, are relegated to suits under section 9. By the capture nothing is condemned, nothing confiscated, nothing concluded. The citizen runs only the risk of temporary dispossession through the misprision of the officials; not always a light matter it is true, but a necessary incident of war. To entangle this power in incidental litigations would be substantially to deny its value, which depends upon its speedy and absolute exercise." This was said of seizure under section 7 (c) of the Act but the statement applies equally to vesting under section 5 (b).

There are two types of vesting orders, "res" vesting orders and "all right, title and interest" vesting orders. The difference between the two is that in the latter type the custodian must prove the nature and extent of the interest in the res that is vested before he obtains possession of such interest.

Conceding that such is the law, Elsie nevertheless questions the efficacy of the vesting order in this case on three grounds: first, that it is illegal; second, that it does not describe the share in dispute; and third, that it purports to vest property that was not in existence on January 1, 1947.

The question as to the legality of the vesting order is raised because the order was issued after the termination of the war between the United States and Germany by Joint Resolution of Congress approved on October 19, 1951. (65 Stat. 451)

The vesting authority under section 5 (b) may be exercised only during the time of war or during any other period of national emergency declared by the President. There was no declaration of national emergency by the President when the vesting order was issued. Furthermore, upon the termination of the war, the status of Elsie changed from that of an enemy to a friendly alien.

However, the joint resolution contains the following proviso:

"Provided, however, That notwithstanding this resolution and any proclamation issued by the President pursuant thereto, any property or interest which prior to January 1, 1947, was subject to vesting or seizure under the provisions of the Trading with the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, or which has heretofore been vested or seized under that Act, including accruals to or proceeds of any such property or interest, shall continue to be subject to the provisions of that Act in the same manner and to the same extent as if this resolution had not been adopted and such proclamation had not been issued. Nothing herein and nothing in such proclamation shall alter the status, as it existed immediately prior hereto, under that Act of Germany or of any person with

respect to any such property or interest."

This proviso continued in effect the existing vesting authority, but only with respect to property or interest which could have been vested before January 1, 1947. Inasmuch as it provides for the continuation of the existing vesting authority, it does not require a new delegation from the President to the custodian for its exercise.

The constitutional validity of the proviso has been determined in *Ladue & Co.* v. *Brownell*, 220 F. (2d) 468, cert. denied 350 U. S. 823. However, it is contended that there is a constitutional question which was not considered in that case. The last sentence of the joint resolution provides that nothing therein shall alter the status of any person with respect to any property or interest which was subject to vesting before January 1, 1947. It is argued that the sentence renders the proviso unconstitutional because by continuing the enemy status of a German national it prevents him from obtaining redress under section 9 (a). The answer to the argument is that the sentence provides for the continuation of enemy status only with respect to property or interest which was subject to vesting before January 1, 1947, and does not continue such status with respect to property which could not have been vested before such date. A German national who has a claim to property which was not subject to vesting before such date but which was nevertheless vested is not an enemy and may claim the property under section 9 (a).

Now we come to the question as to whether the share in dispute is covered by the description in the vesting order. The description consists of two parts, first, a description of the trust estate and, second, a description of the particular interest in the trust estate that is vested.

The trust estate is described as "the Estate of H. Renjes, deceased." Elsie argues that there was no such thing as "the Estate of H. Renjes, deceased" on the effective date

of the vesting order because the testator's estate was distributed and went out of existence upon the close of the probate proceeding in Probate No. 4432.

The term "estate" is used to denote an aggregate of property of all kinds that a person possesses. In *Tanner v. Estate of Best,* 40 Cal. App. (2d) 442, 104 P. (2d) 1084, the court said: "The 'estate' of a decedent is not an entity known to the law. It is neither a natural nor an artificial person. It is merely a name to indicate the sum total of assets and liabilities of a decedent, or of an incompetent, or of a bankrupt." Similar expressions are found in other cases. (*Boyd* v. *Sibold,* 7 Wash. [2d] 279, 109 P. [2d] 535; *Nashville Trust Co.* v. *Grimes,* 179 Tenn. 567, 167 S. W. [2d] 994; *In re Frey's Will,* 277 N. Y. S. 269)

Thus, "the Estate of H. Renjes, deceased" has reference to the property left by the testator. It is further identified as property "in the process of administration by Herbert Melville Dowsett, as testamentary trustee of the last will and testament of H. Renjes, deceased acting under the judicial supervision of the First Circuit Court of the Territory of Hawaii." The description sufficiently identifies the trust estate. On the effective date of the vesting order the property left by the testator was in existence. True, it was not in the identical form in which the testator left it. Nevertheless, it was his estate because it consisted of re-investments of the property that he left. The property was managed by Herbert Melville Dowsett, who purported to act as trustee under the provisions of the testator's will. His dealings with respect to the property were subject to the supervision of the Circuit Court of the First Circuit in Equity No. 1953. The first article of the will has been treated as creating a trust of the testator's estate in Hawaii without any question until Elsie advanced the contention in this case that it did not create a trust but that it merely provided a straight bequest of a life estate and a remainder

in personal property without the interposition of a trust.

For the purpose of this case, it is immaterial whether a trust was created or whether there was a bequest of a life estate and a remainder without a trust. The vesting order purports to describe certain property held by Herbert Melville Dowsett and as to which he was acting as trustee. It makes no difference whether he was legally a trustee. There was such property and the description in the vesting order applies to it.

*Isenberg* v. *Trent Trust Co.*, 26 F. (2d) 609, upon which Elsie relies, is distinguishable from this case. There the court held that the custodian's demand addressed to Kekaha Sugar Company for 840 shares of common stock standing on its books in the name of the Estate of Otto Isenberg did not effect a seizure of such shares. The court stated: "The demand made on Kekaha Sugar Company gave notice that the Custodian had determined that 'Estate of Otto Isenberg, whose address is Berlin, Germany, is an enemy and has a right, title, and interest in and to 840 shares of common stock standing on your books in the name of the Estate of Otto Isenberg.' There was no estate of Otto Isenberg whose address was Berlin or elsewhere, and there were no shares standing on the books of the Kekaha Sugar Company in the name of the Estate of Otto Isenberg. Otto Isenberg had died many years before. His estate had been administered, settled and closed, and his executors had been discharged in 1905, and in that year the property of the estate had been delivered to trustees, who held it for the benefit of Otto Isenberg's widow and children, and from and after that date the shares of the stock of the Kekaha Sugar Company stood in the names of the trustees."

*Isenberg* v. *Trent Trust Co.* involved attempted seizure during World War I. There was no vesting procedure then. The custodian obtained possession of enemy property by

seizure under section 7 (c). Seizure of an interest in property was by demand. In that case demand was made on a wrong party and the property purported to be seized was inaccurately described. The shares in question were in the name of Trent Trust Company, Limited. The certificates representing the shares were in the possession of the trust company. No demand was made on the trust company. On this point the court said: "It has been uniformly held that no seizure can be had without a valid demand upon the party in possession of the property."

Here we have a case which involves vesting under section 5 (b), in which the vesting order becomes effective upon its filing with the Division of the Federal Register. The important thing is that the vested property is identified in the order. There can be no question as to the identity of the property described in the order in this case.

With respect to the particular interest in the trust estate that is vested, it is described as "all right, title, interest and claim of any kind or character whatsoever" of the successors in interest of Else Renjes Becker, except Ingeborg. The successors in interest of Else Renjes Becker are described as "the domiciliary personal representatives, heirs-at-law, next-of-kin, legatees and distributees, names unknown, of Else Becker, nee Renjes, deceased, including but not limited to the domiciliary personal representatives, heirs-at-law, next-of-kin, legatees and distributees, names unknown, of Carl Alfred Becker, deceased."

The share in dispute came within the description of the particular interest in the trust estate that was vested. In her petition in intervention Elsie claims one-half of the trust estate. She says she is entitled to such share because she is the same Elsie Becker who is mentioned in the trustee's petition. The trustee alleged in his petition that Elsie is a daughter of Else Renjes Becker by her second marriage to Carl Alfred Becker. In her petition in inter-

vention and motion to dismiss the custodian's petition, Elsie did not contest the custodian's claim on the ground that she was not included in the description of the persons whose property was vested. Implicit in the allegations of Elsie's petition in intervention and motion to dismiss is an admission that she is a successor in interest of her mother. Elsie alleges no other basis for claiming such share. No other person has appeared to claim such share, except the custodian who claims through Elsie.

There remains to be considered the question as to whether the share in dispute is property that came into existence after January 1, 1947, and therefore not within the reach of the vesting authority of the custodian as extended by the proviso in the joint resolution. Elsie argues that her grandfather's will should be construed according to German law because he was domiciled in Germany at the time of his death, and that under the Germany law she did not acquire any interest, either vested or contingent, in the share in dispute until the death of her grandmother on December 31, 1952. The contention may properly be advanced in a proceeding under section 9 (a) but not here. The vesting order contains the findings that the share in dispute was within the United States before January 1, 1947 and is property in which enemy nationals had an interest before such date. The findings are conclusive in this case.

It is said that in the case of an all right, title and interest vesting order the custodian must prove his case. This does not mean that the court may question his findings. It only means that he is required to prove the extent of the interest in the res that is vested. (*Joseph W. Bishop, Jr., Judicial Construction of the Trading with the Enemy Act,* 62 Harv. L. Rev. 721, 734) In *Brownell* v. *Edmunds,* 209 F. (2d) 349, the custodian was unable to establish the interest that was vested because the vesting order vested

nothing. There the interest described in the vesting order was not in existence at the time of the issuance of the vesting order and could never have come into existence at any time because of the operation of the rule against perpetuities. Here the custodian has no such difficulty. There is no dispute as to the extent of the interest that is covered by the description in the vesting order. It is one-half of the trust estate. Such interest was in existence on the effective date of the vesting order. As to whether it was also in existence before January 1, 1947, we are bound by the custodian's finding to that effect.

The vesting order in this case was issued after the termination of the war and there may not be the urgency in its execution as in the case of orders issued during the war. But the Congress, in permitting the exercise of the vesting authority beyond the period of the war, did not change its basic scheme as a war measure and we may not disturb the settled construction regarding the finality of the custodian's findings. Again we quote Judge Hand: "The purpose was to accomplish a swift, certain, and final reduction to possession of vast quantities of property involved in incredible complication of ownership and interest. That purpose could be accomplished only at the sacrifice of much that custom had made sacred; with its propriety courts have nothing to do; they may only learn what it was, and consider whether the constitutional limitations were observed." (*Kahn* v. *Garvan, supra,* 917)

Whether the share in dispute was in existence before January 1, 1947, as found by the custodian, or sprang into existence thereafter, as contended by Elsie, is a "complication of ownership and interest" which is relegated to section 9 (a) for determination.

We see no error in the denial of the motion of Elsie's attorneys for attorneys' fees. Before the filing of the motion, the court had entered an order directing partial

distribution of the trust estate to Ingeborg. In the order the court awarded an attorney's fee to the trustee's attorney, payable out of the trust estate, and directed the trustee to pay one-half of the trust estate, after deducting such attorney's fee and certain other expenses, to Ingeborg. One of Elsie's attorneys participated in the hearing that preceded the entry of the order, approved the order as to form and knew of its entry. The order has not been appealed and is not now appealable.

In the circumstance, in their motion, Elsie's attorneys do not seek the payment of their fees from the trust estate as a whole but only "out of the remaining assets of the trust estate." This is no more than a claim for attorneys' fee to be paid out of vested property. Such claim may only be asserted as provided in the Act. (*Paramount Pictures* v. *Sparling,* 122 Cal. App. [2d] 221, 264 P. [2d] 648)

An award of attorney's fee may be made out of a trust estate if the controversy in which the services are rendered is occasioned by an ambiguity in the instrument creating the trust. (*Bishop Trust Co.* v. *Jacobs,* 36 Haw. 686; *Wodehouse* v. *Robinson,* 27 Haw. 602) This is not such a case. The controversy in this case arose solely because of the exercise by the custodian of his authority under the Act. Except for such action by the custodian, the trust estate would have been distributed one-half to Ingeborg and one-half to Elsie without any question.

Affirmed.

*Genro Kashiwa* (*Roger E. Brooks* and *Shiro Kashiwa* on the briefs) for *Elsie Becker,* appellant.

*Irwin A. Seibel,* Attorney, Department of Justice, Washington, D. C. (*Dallas S. Townsend,* Assistant Attorney General, Director, Office of Alien Property; *Louis Blissard,* United States Attorney for the District of Hawaii; *Charles R. Wichman,* Assistant United States Attorney for the District of Hawaii; *James D. Hill, George B.*

*Searls,* Attorneys, Department of Justice, Washington, D. C., with him on the brief), for the Attorney General of the United States, appellee.