[Civ. No. 31811.   Second Dist., Div. Two.   Jan. 31, 1968.]

Estate of KATE MOORE, Deceased. EUGENE P. MATHIAS et al., Petitioners and Respondents, v. BANK OF AMERICA, as Administrator, etc., Objector and Appellant.

Robert R. Mallicoat and Dennis Frederickson for Objector and Appellant.

F. Rodman Woelfle and William O'Neil Carlisle for Petitioners and Respondents.

FLEMING, J.—Bank of America, as administrator and former conservator of the estate of Kate Moore, appeals an order directing it to pay respondents specified compensation

for services rendered the conservatee. The order to pay came about as follows: In October 1965 Dr. Eugene P. Mathias as friend and personal physician of Kate Moore petitioned for his appointment as guardian of her person and for the appointment of Bank of America as guardian of her estate. According to his petition Kate Moore was between the age of 85 and 89, had suffered a stroke that month, and was unable to take care of herself or her property. Her nearest living relative appears to have been a grandniece in England. In November 1965 Moses and Yvonne Rogers petitioned for appointment as conservators of Mrs. Moore's person and estate, representing that in so doing they were acting in harmony with the wishes of Mrs. Moore. The two petitions were consolidated and heard together. After six days of hearings Moses Rogers was appointed conservator of Mrs. Moore's person, and Bank of America conservator of her estate. The petition for appointment of a guardian was denied.

Thereafter a motion was filed by Dr. Mathias' principal attorney for an order allowing fees for services rendered to Mrs. Moore in the proceedings by Dr. Mathias, his attorney, a firm of English solicitors, and an expert medical witness. The motion was assigned to the judge who heard the original petitions, and after a hearing the court found ''The performance of professional services by [respondents] were all reasonably incidental to the creation of the now existing conservatorship and were necessary to safeguard the welfare and best interests of the conservatee.'' The court ordered Bank of America, as conservator of the estate, to pay specified amounts to respondents.

This appeal is based on the proposition that a court is without authority to compensate an unsuccessful petitioner for appointment as guardian. According to this argument, while the Probate Code allows a guardian and his attorney to be compensated for services rendered the estate (§§ 1556, 1556.1), it does not authorize compensation or reimbursement of expenses for one who has unsuccessfully petitioned for appointment; while a successful petitioner for appointment of a guardian may be allowed his expenses, including attorney's fees incurred prior to the appointment (*In re Bundy,* 44 Cal.App. 466 [186 P. 811]), and while the same is true of a successful petitioner for appointment of a conservator (Prob. Code, § 1908), an unsuccessful petitioner is subject to the general rule that litigants are required to compensate their own attorneys and carry their own expenses. (See e.g. *Estate of*

*Marré,* 18 Cal.2d 191 [144 P.2d 591].) Essentially, the bank's argument is the ancient one of no cure, no pay.

There is much in the bank's argument which we accept. Its major premise, that an unsuccessful petitioner for appointment of a guardian or conservator does not earn the right to reimbursement from the estate, is generally sound. If the appointment of a guardian or conservator is sought and denied, it usually follows that (1) a caretaker was not needed, and (2) no estate comes under the control of the court from which compensation could be ordered. We think the bank is on solid ground when it argues that a volunteer earns no right to reimbursement f. r rendering services which have proved unnecessary.

Yet while we accept the bank's general law, we disagree with its application of that law to the facts of this case. ██ We conclude that substantial success accompanied the services for which respondents sought compensation. Clearly, it was as a consequence of Dr. Mathias' initiative that a conservator was appointed for the person and the estate of Mrs. Moore. We find no relevant distinction between guardianship and conservatorship in the present context, but regard them as parallel means directed to the same end, the protection by the court of the person and property of a woman unable to take care of herself. We think Dr. Mathias' petition can be characterized as three-fourths successful. He petitioned that a caretaker be appointed for the property of Mrs. Moore, which was done; that Bank of America be named caretaker of the property, which was done; that a caretaker be appointed for the person of Mrs. Moore, which was done; and that he himself be appointed caretaker of her person—which was not done. Of the four essentials in Dr. Mathias' petition, three were granted. Without reference to the facts of this particular case, we note the frequency with which persons other than the original initiators of caretaker proceedings have been appointed guardians or conservators. The individual who first suggests the need for a caretaker, like a lightning rod, often attracts to his person the lasting wrath and suspicion of the supposed incompetent, who even if later reconciled to the need for a caretaker, will never consent to the appointment of the original petitioner. It is possible that Dr. Mathias' failure to remain persona grata to Mrs. Moore resulted from the fact that his was the initial application. Be that as it may, in spite of his failure to be appointed caretaker substantial success attended his petition and substantial benefits accrued to Mrs.

Moore, viz., court administration of her person and estate during the time she was unable properly to care for herself and her property.

Our question then becomes whether in the absence of statutory authorization, one who in good faith initiates caretaker proceedings in which a guardian or conservator other than the initiator is appointed may be awarded his costs and counsel fees.

We think he may. Such a petitioner performs a service to the disabled by notifying the court of the disabled's condition and need for protection. If compensation were not available, responsible parties might be discouraged from initiating effective action and becoming parties to caretaker proceedings whose primary benefits accrue to other persons. A policy of encouraging prospective guardians to act in appropriate cases was enunciated in *In re Bundy, supra,* 44 Cal.App. 466, 468, the case on which the trial court principally relied in making its order. In *Bundy,* a niece petitioned for the appointment of a guardian for her uncle. Bundy contested the allegation that he was incompetent, the issue was tried, and the guardian was appointed. The niece was awarded her attorneys' fees, an award which was affirmed on appeal. The court reasoned, ''An incompetent person is helpless and the law must think and act for him. The filing of the petition and the hearing thereon are indispensable steps in the preservation of the trust fund. The court, as general conservator of the rights of incompetents and other helpless persons, is solicitous that an application be filed to the end that it may assume control of his estate and preserve it for the owner.''

In analogous situations the broad policy of encouraging persons acting in good faith in the interests of an incompetent has been followed, and compensation has been generally allowed for professional services. (*Estate of Doyle,* 126 Cal. App. 646 [14 P.2d 920] and *Stone* v. *Conkle,* 31 Cal.App.2d 348 [88 P.2d 197] (services to an incompetent seeking restoration to capacity) ; *Guardianship of Cookingham,* 45 Cal.2d 367 [289 P.2d 16] (expenses of guardian in unsuccessfully opposing the ward's petition for restoration to capacity).)

Appellant relies on *Guardianship of Boxley,* 115 Cal.App. 2d 483 [252 P.2d 348], a decision which vacated an award of fees to attorneys hired by a ward to bring about the removal of his guardian. We think that case differs from the present one in two critical respects. First, in *Boxley,* a guardianship already existed, and therefore the case did not involve an at-

tempt to bring the person and property of one unable to care for himself under the supervision of a court; and second, the proceedings to remove the guardian were unsuccessful, and there was no reason to conclude that services of substantial benefit had been rendered the incompetent.

A probate court relies on equitable rules to implement its procedures. (*Estate of Reade*, 31 Cal.2d 669, 672 [191 P.2d 745].) As put by the Supreme Court in *Guardianship of Cookingham*, 45 Cal.2d 367, 370: "In passing upon the propriety of expenditures, the court is governed by equitable considerations relating to the law of trusts. (Prob. Code, § 1400; *Estate of Clanton*, 171 Cal. 381, 387 [153 P. 459].)" We find pertinent the general equitable rule permitting one who has protected, preserved, or increased a fund for the benefit of numerous parties, to be awarded compensation out of the fund for costs and counsel fees. The rule was summarized in *Estate of Stauffer*, 53 Cal.2d 124, 132 [346 P.2d 748]: "The bases of the equitable rule which permits surcharging a common fund with the expenses of its protection or recovery, including counsel fees, appear to be these: fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful."

The rule was applied in *Estate of Lundell*, 107 Cal.App.2d 463, 464 [237 P.2d 62], where in awarding counsel fees for the successful prevention of depletion of an existing fund, the court said: "Such allowance is predicated upon the equitable rule that fees for legal services rendered in preserving a common fund for the benefit of all heirs or persons interested in an estate are proper charges against such fund." The same rule was followed in *Paramount Pictures, Inc. v. Sparling*, 122 Cal. App.2d 221 [264 P.2d 648], where counsel who had initiated litigation which benefited depositors in a Japanese bank taken over by the Alien Property Custodian were held entitled to counsel fees from the fund which had been benefited.

We think the present case falls squarely within the rule of the foregoing cases, because as a result of Dr. Mathias' activity a fund in excess of $200,000 was brought under judicial

control and safeguarded from possible dissipation and neglect. In a very real sense his action preserved a fund for the benefit of the conservatee and her heirs.

Appellant foresees great danger in estates being depleted by volunteers and interlopers who contribute no services of value if such petitions for compensation are allowed. We think a sufficient answer is that petitioners for fees from an estate must convince a court—which in most instances will have firsthand knowledge of the services performed—that they have rendered services of value in order to collect. In representative and derivative suits these matters have been capably handled by the courts for many years, and we see no reason why similar success may not accompany comparable activities in the probate field. (Witkin, California Procedure, (1965 Supp.) pp. 706-708.)

Appellant questions the procedural propriety of awarding these fees on the basis of a motion by respondent Woelfle, the attorney for Dr. Mathias. But under Probate Code, section 1556.1, an attorney who has directly rendered services to a guardian may petition for compensation for services. We think the same procedure may be followed when the services have been *indirectly* rendered.

Appellant's final contention is that after the denial of the petition of Dr. Mathias, none of the respondents were parties to the proceedings, and therefore the order was one for the payment of money in favor of a non-party contrary to the holding in *Garra* v. *Superior Court,* 58 Cal.App.2d 588 [137 P.2d 31]. Here the order read: ''The Bank of America . . . as conservator of the . . . estate is hereby authorized and directed to pay the following sums to the following payees . . .'' In *Guardianship of Hall,* 31 Cal.2d 157, 168 [187 P.2d 396], an order couched in the same phraseology was found impervious to the attack to which the *Garra* order has been vulnerable.

The order is affirmed.

Herndon, J., concurred.

Roth, P. J., concurred in the judgment.

A petition for a rehearing was denied February 27, 1968.